**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**TODD ESS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 29 2012, 9:24 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

KEVIN B. PERRY,                              )
                                             )
    Appellant-Defendant,                )
                                             )
        vs.                        )    No.  30A01-1107-CR-327
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.                 )

APPEAL FROM THE HANCOCK CIRCUIT COURT
The Honorable Richard D. Culver, Judge
Cause No. 30C01-0906-FB-152

**February 29, 2012**

**OPINION--FOR PUBLICATION**

**BAKER, Judge**

In the instant case, the father of a teenage girl's boyfriend invited her and two of her friends over to his house while his son was away. After the girls had arrived, he served them alcoholic beverages and then got into bed where his son's girlfriend was sleeping and, without her consent, inserted his fingers into her vagina and rubbed his penis on her buttocks. The father was charged and convicted of class D felony sexual battery. While the father's actions are reprehensible, they do not qualify for sexual battery as defined by Indiana statute. His actions, however, do constitute class B misdemeanor battery.

Appellant-defendant Kevin B. Perry appeals his conviction for Sexual Battery,[1] a class D felony, arguing that the evidence was insufficient. More particularly, Perry contends that the evidence failed to show that he compelled the victim to submit to touching by force or the imminent threat of force. Concluding that the State failed to show that Perry used force or the imminent threat of force, we reverse his conviction for class D felony sexual battery and remand with instructions that the trial court enter judgment of conviction for class B misdemeanor battery and sentence him to 180 days of incarceration with 90 days suspended.

## FACTS

On April 11, 2009, teenagers, M.Z., S.A., and N.A. met Perry in a Walmart parking lot where he invited them to his house in Hancock County later that evening. N.A. knew Perry because he was the father of her "on and off" boyfriend and she

---

[1] Ind. Code § 35-42-4-8.

considered Perry to be a "father figure." Tr. p. 81-82. Perry called N.A. that night around 9:11 p.m. on her cell phone and invited her to his house. N.A. called Perry's cell phone around 9:49 p.m. and told him that she, S.A., and M.Z. were on their way.

Perry had been drinking when N.A., M.Z., and S.A. arrived at his house around 10:00 p.m. When they arrived, Perry poured the underaged girls "dark liquor" that looked "like whiskey" and bragged that it cost "seventy-eight or eighty dollars." Tr. p. 32, 61-62. Perry served the liquor to M.Z. and N.A. in shot glasses and told them to "drink up." Id. at 37. M.Z. and N.A. "were . . . kind of okay with it at first but it was really gross and he kind of pushed it on us." Id. at 63. Perry put his hand on M.Z.'s leg and told the girls that "age was just a number." Id.

After M.Z. and N.A. had consumed eight to ten shot glasses of liquor, Perry asked all three to leave because he had a friend coming over. M.Z., S.A., and N.A. left Perry's house, but the girls returned by 1:50 a.m. The girls sat down on the couch with Perry to watch a movie, but then N.A. went into her boyfriend's bedroom with M.Z. to sleep because she was tired and intoxicated. N.A. changed clothes in the bedroom and wore a tank top and a pair of her boyfriend's boxer shorts to bed. M.Z. remained in the bedroom with N.A. for approximately twenty-five minutes to thirty minutes, but she left after receiving a call on her cell phone.

Sometime after M.Z. left the bedroom, N.A. woke briefly to find Perry in the bedroom with her, tapping her foot and asking N.A. if she was awake. N.A. told Perry

3

"no." Tr. p. 92. M.Z. also watched Perry enter the bedroom where N.A. slept, heard Perry ask N.A. if she was awake, and heard N.A. respond, "no." Id. at 66.

Sometime later, N.A. awoke in bed and found that Perry had his hand in her pants and his fingers inside her vagina. N.A. "kind of laid there because [she] didn't know how to react or what [Perry] would do." Tr. p. 92. N.A. was lying on her side in the bed, and Perry was in the bed behind her. After Perry removed his fingers from her vagina, he unzipped his pants and rubbed his penis on N.A.'s bottom. Fearful that Perry might "get upset and maybe get like physical or something," N.A. pretended that she just woke up, stretched, and checked the time on her phone. Id. at 94.

N.A. left the bedroom crying while still wearing only her boyfriend's boxers and a tank top and insisted on leaving Perry's house. N.A. kept repeating to her friends, "we need to go, we need to go." Tr. p. 40. Once she got into S.A.'s car, N.A. told S.A. that "[Perry] just tried to, he tried to put it in me." Id. at 40-41. When S.A. went back inside Perry's house to confront him, who was still in bed in his son's bedroom, Perry told S.A. to "get the f**k out of my house." Id. at 42.

N.A. contacted the police when she, M.Z., and S.A. arrived at the home of M.Z.'s father around 7:00 a.m. the morning of April 11, 2009. Perry called N.A. on her cell phone the next day to apologize and left her a voicemail message explaining that "he was sorry and that he didn't mean to hurt [N.A.]." Tr. p. 101.

On June 30, 2009, the State charged Perry with class B felony criminal deviate conduct. On February 14, 2011, by agreement of the parties, the State filed a second

4

count of class D felony sexual battery. The State dismissed the charge of class B felony criminal deviate conduct.

Following a bench trial on March 22, 2011, the trial court found Perry guilty as charged and on June 16, 2011, it sentenced him to two years in the Department of Correction, with ninety days executed and the balance suspended to probation. Perry now appeals.

## DISCUSSION AND DECISION

Perry's sole argument on appeal is that the evidence is insufficient to support his conviction for class D felony sexual battery. When reviewing a challenge to the sufficiency of the evidence, we will consider only the probative evidence and reasonable inferences supporting the ruling. Ball v. State, 945 N.E.2d 252, 255 (Ind. Ct. App. 2011), trans. denied. It is the role of the factfinder, rather than the appellate courts, to weigh the evidence and to assess witness credibility. Id. Accordingly, when confronted with conflicting evidence, we will consider the evidence that is most favorable to the trial court's verdict. Id. Moreover, we will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. Id.

Indiana Code section 35-42-4-8(a) provides:

A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is:

(1) compelled to submit to the touching by force or the imminent threat of force; or

5

(2) so mentally disabled or deficient that consent to the touching cannot be given; commits sexual battery, a Class D felony.

Here, "Perry disputes only whether [N.A.] was compelled to submit to the touching by force or the imminent threat of force." Appellant's Br. p. 5. Although an element of sexual battery is that the victim was compelled to submit to the touching by force or the imminent threat of force, the force need not be physical or violent, but may be implied from the circumstances. Chatham v. State, 845 N.E.2d 203, 206 (Ind. Ct. App. 2006). It is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined in a sexual battery prosecution. Id. at 207. This test is subjective and looks to the victim's perception of the circumstances surrounding the incident in question. Id. Therefore, in a sexual battery prosecution, the issue is whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance. Id. It is also noteworthy that in a sexual battery prosecution, the fear experienced by the victim must precede the touching for the fear to indicate that the victim was compelled to submit to the touching by force or imminent threat of force. Id.

The facts in this case are sufficiently analogous to Smith v. State, 678 N.E.2d 1152 (Ind. Ct. App. 1997), for it to be instructive. In Smith, the defendant reached his hand down the victim's pants and fondled the victim's penis. Id. at 1155. The victim testified that he had no reason to fear the defendant before this incident and that he did not say anything to the defendant while he was fondling him because he "'didn't know what to

6

do.'" Id. (quoting Record at 373). A panel of this court held that although there was sufficient evidence to support a battery conviction, the evidence failed to demonstrate sexual battery, inasmuch as it did not show that the victim was compelled to submit to the touching by force or the imminent threat of force. Id.

Similarly, the panel in Smith determined that there was insufficient evidence to support the sexual battery conviction involving a different victim. Id. That victim testified that he awoke to the defendant sliding his hand up the inside of the victim's shorts and grabbing the victim's penis. Id. When asked whether the victim said anything when he realized what was happening, the victim responded "'no, not really.'" Id. (quoting Record at 438). The victim also stated that he did not discuss the incident with the defendant after it had happened. Id. The panel found that although the victim clearly did not consent to the touching, there was no evidence of force or the imminent threat of force. Id.

> In this case, N.A. testified:
>
> I woke up and [Perry] had his hand in my pants and his fingers were in my vagina and uh, I kind of laid there because I didn't know how to react or what he would do. And then he took his hand out and I heard him unzip his pants and he was rubbing his penis on my bottom.

Tr. p. 92. N.A. grabbed her cell phone and checked the time, while pretending like she did not realize what had just occurred because she "didn't want him to get upset and maybe get like physical or something." Id. at 94. N.A. then walked out of the room and left Perry's house.

7

Like Smith, in this case, although the evidence is sufficient to support a battery conviction, there is insufficient evidence to support a conviction for sexual battery, inasmuch as the evidence fails to demonstrate that N.A. was compelled to submit to the touching by force or the imminent threat of force. Nevertheless, the State emphasizes one distinguishing fact, namely, that N.A. became fearful between the time when she awoke to find the defendant's fingers inside her vagina and when the defendant unzipped his pants and rubbed his penis on her buttocks. The State contends that this is sufficient to show that N.A was forced to submit to Perry rubbing his penis on her buttocks. We cannot agree, insofar as according to N.A.'s testimony the acts were so close in time to constitute one continuous act. See Buchanan v. State, 913 N.E.2d 712, 720 (Ind. Ct. App. 2009) (stating that "actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction").

The State also counters that the evidence was sufficient to show that "[Perry] committed sexual battery under the mental disability and deficiency prong of the State's charging information and the statute." Appellee's Br. p. 9. Recently, in Ball v. State, 945 N.E.2d 252 (Ind. Ct. App. 2011), trans. denied, a panel of this Court interpreted "mentally disabled or deficient" under the sexual battery statute. The panel concluded that being asleep did not qualify as being mentally disabled or deficient. Id. at 258. Additionally, in reaching its decision, the panel highlighted the similarities between the rape and criminal deviate conduct statutes and the sexual battery statute and noted that

8

the phrase had been expanded in the former two statutes to include those with lower than normal intelligence, highly intoxicated victims, and a victim who had unknowingly ingested eight Xanax. Id. at 257.

In this case, although N.A. had consumed alcohol to the point that she "passed out," tr. p. 92, she testified that when she awoke to find Perry's fingers in her vagina, she was "not that drunk because [she] slept for about two hours so [she] was still a little buzzed." Id. at 93. We conclude that this is insufficient to satisfy the "mentally disabled or deficient" prong of the sexual battery statute. To be sure, N.A. was sufficiently coherent to feign checking the time on her cell phone and pretending like she was unaware that Perry had touched her.

We do not mean for our holding and reasoning in this case to be construed as approval for Perry's actions. Indeed, we find the fact that he invited underage girls to his house, furnished them with alcoholic beverages, and then invasively touched one of them to be quite repulsive. Nevertheless, Perry's conduct does not meet the definition of sexual battery as set out in the statute. Accordingly, we must reverse his conviction for sexual battery.

However, when a conviction is reversed because of insufficient evidence, we may remand to the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. Ball, 945 N.E.2d at 258. The Indiana Code section 35-42-2-1(a) provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits

9

battery, a Class B misdemeanor." The evidence at trial was that Perry inserted his fingers into N.A.'s vagina and rubbed his penis on her buttocks. Tr. p. 92. This is sufficient to show that Perry committed class B misdemeanor battery. See Ball, 945 N.E.2d at 258 (reversing sexual battery conviction for insufficient evidence but remanding for entry of judgment of conviction for class B misdemeanor battery). The judgment of the trial court is reversed and the cause is remanded with instructions to the trial court to enter judgment of conviction for class B misdemeanor battery and to sentence Perry to 180 days of incarceration with 90 days suspended.

The judgment of the trial court is reversed and remanded with instructions.

DARDEN, J., and BAILEY, J., concur.