**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 28 2013, 7:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL C. BORSCHEL**
Fishers, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SANTOS VASQUEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1301-CR-1 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Stanley Kroh, Commissioner
Cause No. 49G04-1111-FB-81523

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Santos Vasquez appeals his conviction of Burglary,[1] a class B felony. Vasquez presents the following restated issues for review:

1.      Did the trial court err in admitting DNA evidence?

2.      Was the evidence sufficient to support the conviction?

We affirm.

The facts favorable to the conviction are that on August 7, 2010, R.B. lived by herself in her Indianapolis home. On that night, she fell asleep on the couch. She had closed and locked the back door to her residence, and had also closed and locked the front storm door, although the main front door stood open. Just before 3 a.m., she woke up to find a man whom she did not know kneeling on the floor beside her, touching her breasts and vaginal area outside of her clothes. When he attempted to put his hands inside her pants, she pushed his hand away. At that point, she noticed that he had unfastened her pants and that his pants were pulled down around his knees. R.B. told the man to stop touching her and to leave. He refused. She attempted to get off of the couch, but the man put his hand on her chest and did not allow her to get up. The man told R.B. that he loved her. She responded that was impossible, because he did not even know her. She asked who he was and he responded in a Spanish accent, "I am your leetle friend." *Exhibits Binder*, Plaintiff's Exhibit 10. After that, "the man put his mouth on her breast and sucked on it through the shirt she was wearing." *Id*. The man then fled through the back door of the home. R.B. checked the front door and discovered that it was not locked.

---

[1]  Ind. Code Ann. § 35-43-2-1 (West, Westlaw current through P.L. 171 with effective dates through May 7,

R.B. called the police and reported what had happened. Detective Rick Burkhart of the Indianapolis Metropolitan Police Department responded to the call and spoke with R.B. She told him that she did not clearly see the intruder's face, but she described him as having a dark complexion and a slender build. Det. Burkhart recovered the shirt R.B. was wearing at the time of the assault. DNA testing performed on the shirt revealed the presence of DNA that was not R.B.'s. The DNA profile found on the shirt was entered into the Indiana DNA database (CODIS). It matched Vasquez's. Based upon the database match, Det. Burkhart applied for a search warrant for the purpose of obtaining a buccal cell sample from Vasquez. The warrant was issued and a sample was taken from Vasquez via a buccal swab. The DNA sample taken from R.B.'s shirt matched the DNA profile from Vasquez's buccal swab.

The State charged Vasquez with burglary as a class B felony and sexual battery as a class D felony. Before trial, Vasquez moved to suppress the DNA evidence on grounds that his DNA profile was not validly in the database. This, in turn, was based upon the argument that his DNA profile had been placed in the database as a result of prior convictions that were themselves invalid because of an unconstitutional detention. The trial court denied the motion to suppress. Following a bench trial, Vasquez was convicted of burglary as a class B felony.

1.

Vasquez contends the trial court erred in admitting DNA evidence. The decision to admit or exclude evidence lies within the trial court's sound discretion and is generally

2013).

3

afforded great deference upon appeal. *Carpenter v. State,* 786 N.E.2d 696 (Ind. 2003). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *An-Hung Yao v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012) (quoting *Hoglund v. State,* 962 N.E.2d 1230, 1237 (Ind. 2012)). "A trial court also abuses its discretion when it misinterprets the law." *Id*. We will not reverse a trial court's ruling on the admissibility of evidence absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Carpenter v. State*, 786 N.E.2d 696. In making this determination, the court on review will consider the evidence in favor of the trial court's ruling and unrefuted evidence in a defendant's favor. *Sallee v. State,* 777 N.E.2d 1204 (Ind. Ct. App. 2002), *trans. denied*.

Vasquez contends his DNA profile was present in the CODIS database as a result of "a series of missteps in his prior cases where his illegal detention was not challenged by either trial or appellate counsel." *Appellant's* Brief at 6. Thus, he continues, its inclusion in the CODIS database was illegal in the first place. Vasquez contends this is "the classic 'for want of a nail' tale of causality come to life." *Id*. If we understand the argument, perhaps "fruit of the poisonous tree" is a more apt metaphor. Be that as it may, Vasquez essentially argues that his CODIS DNA profile was obtained illegally and therefore its subsequent use in any legal forum is, by extension, also illegal. Whatever else may be said of this novel argument, it represents an impermissible collateral attack on a prior conviction, because it rests entirely upon the validity of the prior conviction. We cannot entertain such an argument. *See Kuhn v. State ex rel. Van Natta*, 402 N.E.2d 38 (Ind. Ct. App. 1980).

2.

Vasquez contends the evidence was not sufficient to support the conviction. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

In order to convict Vasquez of burglary, the State was required to prove beyond a reasonable doubt that he broke and entered a building or structure of another person with intent to commit a felony therein. *See* I.C. § 35–43–2–1. Vasquez contends the State failed to do so because it did not establish all of the elements of the predicate felony, i.e., sexual battery. Vasquez explains, "the evidence before the trial court was insufficient to prove beyond a reasonable doubt that the victim experienced fear prior to the unwanted touching in question, as required in *Perry v. State*, 962 N.E.2d 154 (Ind. Ct. App. 2012)." *Appellant's Brief* at 6. This argument miscomprehends the elements of burglary.

"Burglary is the breaking and entering of the building or structure of another person with *the intent* to commit a specific felony therein." *Baker v. State,* 968 N.E.2d 227, 229 (Ind. 2012) (emphasis supplied). Thus, the State was not required to prove all of the

5

elements of sexual battery in order to obtain a burglary conviction. Rather, it was enough to prove that Vasquez broke and entered R.B.'s home with the intent to commit that offense. With respect to this intent element, our Supreme Court has observed,

> "[b]urglars rarely announce their intentions at the moment of entry," [*Gilliam v. State,* 508 N.E.2d 1270, 1271 (Ind. 1987) ], and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering "may be inferred from the circumstances." *Id.*

*Id.* at 229–30.

In the present case, Vasquez does not challenge the evidence establishing the elements of breaking and entering into R.B.'s home. Moving now to what Vasquez calls the "predicate" offense, sexual battery is defined as follows: "A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is ... compelled to submit to the touching by force or the imminent threat of force ... commits sexual battery, a Class D felony." Ind. Code Ann. § 35-42-4-8 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). The State presented evidence that R.B. awoke to discover Vasquez fondling her breasts and vaginal area, with his hands on top of her clothing at the time. Vasquez forcefully held R.B. down on the couch when she attempted to get up. He then attempted to put his hands inside her pants. At the time he was touching her, Vasquez had pulled his pants down around his knees. This evidence is easily sufficient to permit a reasonable inference that Vasquez broke and entered into R.B.'s home with the intent to commit the offense of sexual battery.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.