## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 02 2020, 9:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas M. Leatherman
Leatherman & Miller Law Office
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Sharp,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 2, 2020

Court of Appeals Case No.
19A-CR-2958

Appeal from the Elkhart Superior Court

The Honorable Kristine Osterday, Judge

Trial Court Cause No.
20D00-1803-F6-503

**May, Judge.**

[1] David Sharp appeals following his conviction of Level 6 felony sexual battery.[1] He argues the State failed to present sufficient evidence to sustain his conviction. We affirm.

# Facts and Procedural History

[2] In January 2018, Sharp, a fifty-one-year-old man, started dating Rita Kitchen. Kitchen lived in a house in Elkhart with her son and eighteen-year-old daughter, A.G. On February 13, 2018, Kitchen went to work at the post office, and A.G. went to her job. A.G. finished work at approximately 2:30 p.m., and she drove directly home after work. No one else was home when A.G. arrived, and she sat down on a barstool in the kitchen to work on her fingernails.

[3] Shortly thereafter, Sharp arrived at the house and parked his car in the driveway directly behind A.G.'s car. Neither A.G. nor Kitchen expected Sharp to come to the house before Kitchen returned from work. Sharp entered the house through the door that led from the garage into the interior of the house near the kitchen. After some small talk in the kitchen, A.G. asked Sharp to let the dogs out into the backyard. Sharp replied, "I will for a kiss." (Tr. Vol. III at 31.) Sharp's response left A.G. "completely befuddled" and she started to get off her stool to let the dogs out. *Id.* Sharp got up before A.G. left her stool and opened the backdoor for the dogs to go outside.

---

[1] Ind. Code § 35-42-4-8.

[4]     Sharp then went to where A.G. was sitting.  He put a hand on either side of A.G., "thus pinning [A.G.] into the chair."  (*Id*. at 33.)  Sharp leaned over and kissed A.G. twice on the lips.  Sharp returned to his barstool and said, "Now that wasn't so bad, was it?"  (*Id*. at 37.)  A.G. gathered her things and retreated to the bathroom.

[5]     A few minutes later, A.G. realized she left her cellphone in the kitchen, and she decided to retrieve it.  A.G. picked her phone up off the kitchen counter and started to text her ex-girlfriend and friend, Tayler Norris, when Sharp approached her from behind and grabbed her left buttock.  Before Sharp grabbed her, A.G. thought "no, please don't do it.  Don't do anything."  (*Id*. at 41.)  A.G.'s jaw dropped, and she froze until Sharp released his grip.  A.G. then left the kitchen and went into her bedroom.  She texted Norris:

> Dave got back to the house before mom and started flirting with me and then he tried to make out with me and wouldn't let me move away and then he asked for another kiss and grabbed my butt even though I told him no.  I hate today.  I want it all to go away[.]

(State's Ex. 2.)  A.G. also stated in her texts to Norris that she was scared and physically shaking.

[6]     A.G. started moving items from her bedroom down to the basement, and Sharp helped her even though A.G. told Sharp she did not need any help.  After taking the items down to the basement, A.G. picked up a magazine lying on her bedroom floor and sat down on a desk chair to read it.  Sharp walked up to the

door of A.G.'s bedroom and made "suggestive comments about him, [Kitchen], and [A.G.]" (Tr. Vol. III at 61.) Sharp also pulled on his jeans around his genital area. He then approached A.G. He leaned over A.G.'s left side and grabbed her left breast. Sharp then said, "Wow. I think these are a little bigger than your mom's." (*Id.* at 63.) A.G. hunched over, and Sharp started to pull the collar of her sweatshirt away from her neck. A.G. pushed his hand away. Sharp attempted to pull up the bottom of A.G.'s sweatshirt, and A.G. pushed his hand away again.

[7] Kitchen left work at approximately 5:45 p.m. She stopped at Meijer to buy beer for Sharp, and then she went home. Kitchen talked with Sharp for a little while and started cooking dinner. She then saw A.G. "standing in the hallway ghost white[.]" (Tr. Vol. II at 102.) Kitchen asked Sharp to retrieve the beer from her vehicle, and while he was out of the house, A.G. told Kitchen what Sharp had done. When Sharp returned inside, Kitchen told him to leave her house.

[8] The State charged Sharp with Level 6 felony sexual battery and Class B misdemeanor battery.[2] The trial court held a jury trial on October 1-2, 2019. The jury returned a verdict of guilty on the sexual battery count. The battery count was dismissed. The trial court sentenced Sharp to a term of two years, with one year suspended to probation.

---

[2] Ind. Code § 35-42-2-1.

# Discussion and Decision

[9] When we review a sufficiency of the evidence claim, we do not reweigh the evidence or judge the credibility of the witnesses. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*. We consider only the probative evidence and reasonable inferences supporting the verdict. *Parks v. State*, 113 N.E.3d 269, 272 (Ind. Ct. App. 2018). We will reverse only if no reasonable factfinder could determine the State proved all elements of the offense beyond a reasonable doubt. *Id*.

[10] Indiana Code section 35-42-4-8 provides:

> A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person . . . touches another person when that person is compelled to submit to the touching by force or the imminent threat of force . . . commits sexual battery, a Level 6 felony.

We evaluate the presence or absence of forceful compulsion from the victim's perspective. *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996). "This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Id*. The force element of sexual battery "need not be physical or violent, but may be implied from the circumstances." *Perry v. State*, 962 N.E.2d 154, 158 (Ind. Ct. App. 2012). Fear is not a prerequisite to proving force or the threat of

force, but it may be evidence of force or the threat of force. *McCarter v. State*, 961 N.E.2d 43, 46 (Ind. Ct. App. 2012), *trans. denied*.

[11] Sharp argues the State did not prove that he compelled A.G. to submit to the touching by force or the imminent threat of force. He contends his case is an example of the State prosecuting an individual for sexual battery when "the victim's emotions are kept inward (or privately displayed) while the outwardly displayed responses and actions appear totally contrary." (Appellant Br. at 15.) However, A.G.'s testimony indicates she made it perfectly clear by her actions that Sharp's advances were unwelcome. Nonetheless, Sharp continued to touch her against her will and restrict her movement.

[12] Sharp pinned A.G. in a barstool and kissed her even after she tried to ignore Sharp's offer to let the dogs outside for a kiss. After the kissing encounter, Sharp grabbed A.G.'s left buttock causing her to freeze until Sharp released her. He then entered A.G.'s bedroom, made suggestive comments, and grabbed her breast. When A.G. pushed Sharp's hand away after he pulled on the collar of her sweatshirt, he tried to lift up the bottom of her sweatshirt. All these incidents occurred over an approximately forty-five-minute period, and A.G. texted her friend that she was scared during the episode. Sharp's argument that he did not use force or the threat of force to compel A.G. to submit to the touching is simply an invitation for us to reweigh the evidence, which we will not do. *See Filice v. State*, 886 N.E.2d 24, 36 (Ind. Ct. App. 2008) (rejecting defendant's argument that victim was aware and able to consent at time of sexual encounter as a request to reweigh the evidence), *trans. denied*. We

therefore hold the State presented sufficient evidence to sustain Sharp's conviction of Level 6 felony sexual battery. *See Bailey v. State*, 764 N.E.2d 728, 732 (Ind. Ct. App. 2002) (holding evidence was sufficient to sustain conviction for sexual battery when defendant approached victim from behind and grabbed her buttocks after she told him on a previous occasion to leave her alone), *trans. denied*.

# Conclusion

[13] The State presented sufficient evidence to demonstrate Sharp compelled A.G. to submit to his touching by force. Therefore, we affirm his Level 6 felony sexual battery conviction.

[14] Affirmed.

Robb, J., and Vaidik, J., concur.