

**FILED**

Mar 08 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
John Pinnow
Special Assistant to the State
  Public Defender
Greenwood, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

---

# In the
# Indiana Supreme Court

---

No. 90S02-1105-CR-294

KEITH HOGLUND,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

---

Appeal from the Wells Circuit Court, No. 90C01-0605-FA-1
The Honorable David L. Hanselman, Sr., Judge

---

On Petition To Transfer from the Indiana Court of Appeals, No. 90A02-1005-CR-591

---

**March 8, 2012**


**Rucker, Justice.**

In this appeal we examine the admissibility of vouching testimony in the context of child sex abuse allegations. We conclude that testimony amounting to the equivalent that a witness believes the child is telling the truth is inconsistent with our rules of evidence. Case authority to the contrary is expressly overruled.

**Facts and Procedural History**

Keith Hoglund and Teresa Mallott were married in June 1998. At the time, Mallott was the mother of a four-year-old son from a prior relationship. Two daughters were born to the marriage, A.H. in 1998 and a sister in 2001. In June 2002 the family moved from Fort Wayne to a home in Wells County. A.H. was four years old at the time. When A.H. was about five years old, she told Mallott about an incident in which Hoglund had taken a shower with her. An upset Mallott confronted Hoglund; he denied the allegation and Mallott at first believed him. In February 2006 a tearful eight-year-old A.H. again told Mallott about possible sexual abuse. This time Mallott reported the incident to a detective with the Wells County sheriff's department. The detective questioned A.H. who told him, among other things, that Hoglund "put stuff on his penis and ha[d] her lick it off." Tr. at 147. Hoglund was arrested and on May 4, 2006, he was charged with two counts of child molesting as Class A felonies. At trial, then twelve-year-old A.H. testified that Hoglund first began molesting her when she was four years old. Hoglund would cause her to fellate him approximately two or three times per week. And this lasted until after A.H.'s seventh birthday. Hoglund would rub flavored substances onto his penis and occasionally ejaculate into A.H.'s mouth. Hoglund also showed A.H. a pornographic movie depicting oral sex, told her that her mother viewed her with disgust and cared more for her siblings than her, promised to give her money and toys, and told her that she would be "covered in black and blue" and that he would go to jail if she told anyone. Tr. at 78. After A.H. told Hoglund that she no longer wanted to fellate him, she asked him if he would ever force her younger sister to fellate him, and Hoglund responded, "I don't know, maybe." Tr. at 30.

The State called as expert witnesses pediatrician Carol Butler, clinical psychologist Amanda Mayle, and mental health counselor Christine Shestak. Each witness had treated or

counseled A.H. In varying degrees of specificity, each witness essentially testified that A.H. was "not prone to exaggerate or fantasize" concerning sexual matters.

The jury found Hoglund guilty on both counts of child molesting as Class A felonies. Apparently due to double jeopardy concerns the trial court sentenced Hoglund to a term of fifty years on Count I only.[1] Hoglund appealed contending the testimony of the expert witnesses constituted impermissible vouching evidence. He also argued that based on his character and the nature of the offense a fifty-year sentence was inappropriate. In a divided opinion the Court of Appeals rejected both claims and affirmed the trial court's judgment. Hoglund v. State, 945 N.E.2d 166 (Ind. Ct. App. 2011). Having previously granted transfer thereby vacating the opinion of the Court of Appeals, see Ind. Appellate Rule 58(A), we examine the admissibility of vouching testimony. We summarily affirm that portion of the Court of Appeals opinion concerning Hoglund's inappropriateness claim. Additional facts are set forth below.

**Background**

**A.**

For over two decades our courts have adhered to relaxed evidentiary rules concerning the testimony of children who are called upon as witnesses to describe sexual conduct.[2] Beginning in Lawrence v. State, we held:

> Whenever an alleged child victim takes the witness stand in such cases, the child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue, whether or not

---

[1] We say "apparently" because the record is not altogether clear. The trial court made no express ruling on this point. However, at the sentencing hearing the State argued that Hoglund should be sentenced on only one count "because the charges are identical and I think the Indiana Constitution and US Constitution would require that he be sentenced to only [one] of those sentences or one of those counts." Sentencing Tr. at 8.

[2] Indiana has not been alone in this regard. See, e.g., Patterson v. State, 628 S.E.2d 618, 620 (Ga. Ct. App. 2006) ("An expert witness may testify generally about the ability of children of a certain age to distinguish truth from falsity." (quoting State v. Oliver, 372 S.E.2d 256, 260 (Ga. Ct. App. 1988)); State v. Kim, 645 P.2d 1330, 1336-37 (Haw. 1982) (holding experts may testify regarding child's credibility if certain limitations are met), overruled by State v. Batangan, 799 P.2d 48, 54 (Haw. 1990).

3

there is an effort by the opponent of such witness to impeach on the basis of a lack of such capacity. The presence of that issue justifies the court in permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions will facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of "I believe the child's story", or "In my opinion the child is telling the truth."

464 N.E.2d 923, 925 (Ind. 1984); accord Head v. State, 519 N.E.2d 151, 153 (Ind. 1988) (finding it permissible under Lawrence to allow witness to testify that child victim was not prone to fabrication or to fantasizing, but reversible error for witness "to review each item of the child's testimony and to specifically vouch for the truthfulness of such testimony").

As the Court of Appeals has observed, "the line between the impermissible vouching for the victim's credibility on the one hand and rendering permissible opinions with regard to a proclivity to not exaggerate or fantasize, on the other hand, is an extremely fine one." Hook v. State, 705 N.E.2d 219, 223 n.4 (Ind. Ct. App. 1999) (finding expert's testimony that it was not uncommon for children to give inconsistent statements over time was not improper vouching testimony as expert only indirectly commented on child's credibility and did not state that witness was trustworthy, that victim was telling the truth, or that witness was reliable and credible), trans. denied. As a result of this delicate line-drawing Lawrence has been cited in support of allowing various statements that indirectly accredit or vouch for a child's testimony. For example in Wright v. State, the Court of Appeals upheld a social worker's testimony that she did not believe the victim was prone to fantasize or exaggerate in sexual matters, and "that she learned nothing about [the child witness] that would be inconsistent with the assertion that [the child] had been a victim of sexual abuse." 581 N.E.2d 978, 980 (Ind. Ct. App. 1991); see Jarrett v. State, 580 N.E.2d 245, 250 (Ind. Ct. App. 1991) (declaring "properly admitted" testimony from pediatrician that "most children [of victim's] age [of five] do not fantasize about sexual relationships without some prior exposure, and that probably 95% of the children telling stories about sexual encounters at that age are telling the truth"). This Court has approved statements that a child witness had an accurate perception of reality, such as in Settle v. State, 526 N.E.2d

4

974, 976 (Ind. 1988) (concluding that such testimony "did not undertake to pass upon whether the child had told the truth in her testimony"). And in Barger v. State, we approved of testimony that the child witness had a reputation for truthfulness. 587 N.E.2d 1304, 1308 (Ind. 1992).

By contrast our courts generally have found error in the admission of accrediting testimony only when it is presented in a more obvious and blatant fashion. See, e.g., Jones v. State, 581 N.E.2d 1256, 1258 (Ind. Ct. App. 1991) ("Here, a witness asserted her belief as to the truth of [the child's] allegations, invading the province of the jury . . . ."); Ulrich v. State, 550 N.E.2d 114, 115 (Ind. Ct. App. 1990) ("By stating that the [child] was reliable and credible, the expert witness invaded the province of the jury."); Douglas v. State, 484 N.E.2d 610, 612 (Ind. Ct. App. 1985) (finding error in testimony that expert witness believed the child was telling the truth).

The foregoing cases are consistent with our Lawrence decision. But Lawrence was decided ten years before this Court adopted the Indiana Rules of Evidence. And as we have observed, "long-standing rules of evidence have been subsumed or eliminated by the adoption of our new rules of evidence." Joyner v. State, 678 N.E.2d 386, 389 n.2 (Ind. 1997). See Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996) ("[W]e believe that the admissibility of evidence is better tested by reference to the concepts found in those rules."). Relevant to our discussion is Rule 704(b), which provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."[3]

In a few cases, the Court of Appeals has interpreted Lawrence as representing an exception to Rule 704(b) noting that the Rule is relaxed in the child molestation context. See, e.g., Rose v. State, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006); Krumm v. State, 793 N.E.2d 1170, 1178-79 (Ind. Ct. App. 2003); Fleener v. State, 648 N.E.2d 652, 657 (Ind. Ct. App. 1995), summarily aff'd in pertinent part by 656 N.E.2d 1140, 1142 (Ind. 1995). But see Hook, 705 N.E.2d at 221-22 (applying Lawrence without mentioning Rule 704(b)).

---

[3] We acknowledge there is authority for the proposition that Rule 704(b) was designed to preserve existing Indiana law by providing that witnesses may not testify to certain specific subjects. See 13 Robert Lowell Miller, Jr., Indiana Practice Series, Indiana Evidence § 704.201 at 589 (3d ed. 2007).

**B**.

This Court has not addressed the interplay between <u>Lawrence</u> and the Indiana Rules of Evidence. Today, we revisit <u>Lawrence</u> to determine whether testimony that a child witness "is not prone to exaggerate or fantasize about sexual matters," 464 N.E.2d at 925, is consistent with Rule 704(b), and if not, whether in any event <u>Lawrence</u> should apply as an exception to the Rule. Stated somewhat differently, we must resolve whether testimony concerning "exaggeration" or "fantasy" is the equivalent of testimony about "truthfulness," and if so, whether such testimony nevertheless merits different treatment in the context of child witness testimony.

Either as a matter of common law or their own rules of evidence, most jurisdictions addressing the issue of "fantasy" have declined to distinguish it from the issue of truthfulness.[4] In <u>State v. Keller</u>, 844 P.2d 195 (Or. 1993), the Oregon Supreme Court repeated the admonition that "a witness may not testify about the credibility of another witness," <u>id.</u> at 202, and found error in allowing a pediatrician – whose specialty was child abuse and neglect – to testify that "there was no evidence of leading or coaching or fantasizing" during her interview with the child. <u>Id.</u> at 201. The Supreme Court of Ohio described as "improper . . . egregious, prejudicial and . . . reversible error" for the trial court to allow the child victim's pediatrician to express her opinion that the victim "had not fantasized her abuse" and that the victim "had not been programmed to make accusations against her father." <u>State v. Boston</u>, 545 N.E.2d 1220, 1240 (Ohio 1989), <u>overruled on other grounds by</u> <u>State v. Dever</u>, 596 N.E.2d 436, 441 n.4 (Ohio 1992). According to the Court this testimony "in effect, declared that [the victim] was truthful in her statements." <u>Boston</u>, 545 N.E.2d at 1240. In <u>State v. Brotherton</u>, 384 N.W.2d 375 (Iowa 1986), the Iowa Supreme Court declared inadmissible an expert's opinion that a three-to-four-year-old child does not have the ability to fantasize a sexual experience. The court held that such testimony was an opinion concerning the truthfulness of the complainant. <u>Id.</u> at 378-79. The Supreme Court of Maine upheld the exclusion of defense testimony by an expert in child psychology to the effect that "because the children's allegations involved unusual elements not found in a typical child abuse case, such allegations could be projections of childhood fantasies."

---

[4] Our research has revealed no authority discussing the issue of "exaggeration." However, for purposes of determining whether testimony concerning a child witness' propensity to exaggerate is akin to truth telling, we see no reason to treat "exaggeration" differently from "fantasy."

State v. Mazerolle, 614 A.2d 68, 71 (Me. 1992). The court declared that the jury was capable of drawing its own conclusions regarding the believability of the children's allegations. Id. Likewise, the Missouri Supreme Court found that a "psychiatrist's specific statement that the victim did not fantasize the rape was an express opinion about her credibility" and hence, inadmissible. State v. Taylor, 663 S.W.2d 235, 241 (Mo. 1984) (en banc) (adult victim), relied upon by State v. Williams, 858 S.W.2d 796, 798-01 (Mo. Ct. App. 1993) (child victim). In Commonwealth v. Davis, 541 A.2d 315, 316-17 (Pa. 1988), the Pennsylvania Supreme Court did not distinguish between fantasizing and fabrication in holding a statement containing both terms to be an impermissible comment on truth-telling. Other courts have held likewise. See, e.g., Jones v. State, 606 So. 2d 1051, 1058 (Miss. 1992) ("Whether children generally tell the truth or not about sexual abuse is not relevant as to whether [the child witness] told the truth about what happened to her, as it does not make it more probable or less probable that [she] was telling the truth."); State v. Gomes, 648 A.2d 396, 403 (Vt. 1994) ("Statements to the effect that children generally do not lie about or fabricate incidents of sexual abuse are also inadmissible because they are the equivalent of a direct comment on the child's truthfulness.").

Indiana has been a part of the minority of jurisdictions in allowing some form of vouching of child witness testimony in child molestation cases. See Schutz v. State, 957 S.W.2d 52, 60 (Tex. Crim. App. 1997) ("Most jurisdictions specifically addressing expert testimony concerning manipulation and/or fantasy have held the particular testimony involved to be an impermissible comment on a witness' credibility."); see also State v. Scheffelman, 820 P.2d 1293, 1298 (Mont. 1991) (acknowledging that the jurisdiction follows the "minority view that allows expert witnesses to testify directly about the credibility of a victim who testifies in a child sexual abuse trial"). Today we depart from the minority.

We continue to recognize that sexual abuse of children is "detestable and society demands prosecution of these abusers." State v. Myers, 382 N.W.2d 91, 97 (Iowa 1986). And "[g]iven the egregious nature of child molestation, we are tempted to stretch the rules of evidence to their utmost." State v. Moran, 728 P.2d 248, 250 n.2 (Ariz. 1986) (quoting State v. Rivera, 678 P.2d 1373, 1377 n.1 (Ariz. 1984)). But, the charge of sexual abuse by itself imposes a heinous stigma on the accused and a conviction results in a serious penalty. See generally Ind.

Code §§ 35-42-4-3; 35-50-2-4 (child molesting can be a class A felony, which carries a maximum sentence of fifty years). Therefore our rules of evidence should be interpreted in light of society's interest as well as an accused's right to a fair trial. Aligning ourselves with the majority of jurisdictions that have considered the matter we conclude that testimony concerning whether an alleged child victim "is not prone to exaggerate or fantasize about sexual matters," Lawrence, 464 N.E.2d at 925, is an indirect but nonetheless functional equivalent of saying the child is "telling the truth." It is this aspect of Lawrence that we today expressly overrule[5] as being inconsistent with the mandate of Rule 704(b) which specifically prohibits witnesses from testifying as to whether another witness "testified truthfully."

The question remains whether we should carve out an exception to the prohibition of Rule 704(b) for child victims of alleged sexual abuse. Much akin to the development of the depraved sexual instinct exception to the hearsay rule – which we abrogated in Lannan v. State – a significant underlying rationale to support permitting some accrediting of a child witness' testimony was that "allowing such evidence lends credence to a victim's testimony describing acts which would otherwise seem improbable standing alone." 600 N.E.2d 1334, 1337 (Ind. 1992). But this rationale presupposes that the very idea of an adult forcing himself or herself upon a defenseless child is inconceivable and that absent some amount of accrediting testimony the child will not be believed. See, e.g., Matthews v. State, 515 N.E.2d 1105, 1106 n.2 (Ind. 1987) (noting that social scientists have expressed concern regarding the reliability of eyewitness testimony of young children).

Sadly, accusations of child molesting in this twenty-first century are all too common.[6] And precisely because of the unfortunate frequency of such accusations the need for accrediting testimony is not as acute as it may have been over two decades ago. See Laurie Shanks, Child Sexual Abuse: Moving toward a Balanced and Rational Approach to the Cases Everyone

---

[5] We disagree with Hoglund's argument that Steward v. State, 652 N.E.2d 490 (Ind. 1995) effectively overruled Lawrence. In Steward we held that evidence of child sexual abuse accommodation syndrome is inadmissible to prove that a child was sexually abused. Id. at 499. The opinion did not address accrediting testimony at issue here.

[6] In 2010 there were over 63,500 substantiated cases of child sexual abuse in the United States. See Children's Bureau, U.S. Dep't of Health & Human Servs., Child Maltreatment 2010 at 50 (2011), available at http://www.acf.hhs.gov/programs/cb/pubs/cm10/cm10.pdf.

Abhors, 34 Am. J. Trial Advoc. 517, 517 (2011) (observing a "pendulum" swing in recent years in public perception about the testimony of young children in child sex abuse cases).[7] We conclude that the shift in public attitudes concerning allegations of child sex abuse undermines the necessity to carve out an exception to Rule 704(b).

To summarize, we expressly overrule that portion of Lawrence allowing for "some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters." 464 N.E.2d at 925. This indirect vouching testimony is little different than testimony that the child witness is telling the truth.[8] As such it is at odds with Evidence Rule 704(b). Further, we decline to carve out an exception to the rule for sex abuse cases.[9]

---

[7] See also Bette Bottoms et al., A Review of Factors Affecting Jurors' Decisions in Child Sexual Abuse Cases, in 1 Handbook of Eyewitness Psychology: Memory for Events 509, 519 (Michael P. Toglia, et al. eds., 2007) (examining literature concerning jurors' perceptions of children's testimony and observing among other things, "[i]n cases highlighting sincerity and honesty as opposed to cognitive competence, with [child sex abuse] cases being a central example, child witnesses are generally viewed as no less credible than adults").

[8] We note there is a body of academic research that supports a conclusion that neither lay nor expert witnesses can meaningfully determine whether a child has told the truth, has given a false narrative, or has adopted false memories. See John E.B. Myers, Myers on Evidence of Interpersonal Violence: Child Maltreatment, Intimate Partner Violence, Rape, Stalking, and Elder Abuse § 6.21, at 550 nn.425-27 (5th ed. 2011). See also Angela R. Dunn, Questioning the Reliability of Children's Testimony: An Examination of the Problematic Elements, 19 Law & Psychol. Rev. 203 (1995) (discussing problems with interview techniques and suggesting measures to aid in producing more reliable interviews with potential victims of child sexual abuse); Robin S. Edelstein, et al., Detecting Lies in Children and Adults, 30 Law & Hum. Behav. 1, 7 (2006) (finding, after empirical study, fifty-percent lie-detection accuracy for both children's and adults' statements); Steve Herman, Improving Decision Making in Forensic Child Sexual Abuse Evaluations, 29 Law & Hum. Behav. 87, 107 (2005) (finding "low overall accuracy in clinician judgments about unconfirmed allegations of child sexual abuse").

[9] The rule we announce today does not undercut this Court's decision in Carter v. State, 754 N.E.2d 877 (Ind. 2001). In that case a psychologist specializing in autism, who had also worked with the child victim, testified as an expert that "autistic children generally have a very, very difficult time manipulating what's in someone's mind, i.e., deliberately deceiving others." Id. at 882 (internal quotation marks omitted). In determining that this was not improper vouching testimony we reasoned that the child's autism compounded the issues, which confronted the jury with "evidence that falls outside common experience." Id. Thus, the psychologist was allowed as an expert to "supplement the jurors' insight." Id. We noted that "[a]lthough Dr. Murphy did not at any point directly state an opinion that [the child] was telling the truth, the jury could easily have drawn a logical inference: autistic children do not deliberately lie, [the child] is autistic, therefore [the child] is not lying." Id. We concluded, however, that "based on the entire context of the expert's testimony that she came close to, but did not cross the line into impermissible Rule 704(b) vouching." Id. at 882-83.

**Discussion**

Hoglund challenges the admissibility of statements elicited from the three expert witnesses. A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused that discretion. Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id.

First, Hoglund lodged a continuing objection to the following line of questioning with respect to Dr. Carol Butler, A.H.'s treating pediatrician. "[Prosecutor]: Dr. Butler, in the time that you dealt with [A.H.] and interviewed her and examined her, based upon that experience and your training and experience as a doctor and pediatrician, do you believe that [A.H.] was, is prone to exaggerate or fantasize in sexual matters?" Tr. at 82. Dr. Butler's eventual response was, "In regards to what she told me, no." Tr. at 83.[10]

Second, Hoglund lodged specific objections to the following two exchanges: "[Prosecutor]: Ms. Shestak, based on your contacts with the victim, did you perceive any indication that she may have fabricated the story about her abuse out of some need?" "[Ms. Shestak]: Her statements were congruent with her experience and I did not see anything that indicated that she had any need to tell this story." Tr. at 120. "[Prosecutor]: Dr. Mayle, do you perceive any indication that [A.H.] may have fabricated this story of her abuse out of some need?" "[Dr. Mayle]: No." Tr. at 181.

Concerning Ms. Shestak and Dr. Mayle the State contends their testimony did not amount to improper vouching because the State did not ask whether or not the witness "believe[d] [A.H.] fabricated the story, the question is going to be whether or not she believed the child fabricated this story *out of some need*." Tr. at 180 (emphasis added). We understand the State's argument to mean that the question was not concerned with the truth of A.H.'s allegations, but the motive behind the allegations. Although clever, the State's use of the phrase "out of some need" does

---

[10] Dr. Butler initially answered the State's question in part by saying, "I believe that what [A.H.] told me was the truth because of her age." Tr. at. 82. The trial court admonished the jury to disregard this statement.

10

not meaningfully change the nature of the question from one about truthfulness to one about motive. Instead, this question necessarily requires the witness to pass judgment on A.H.'s allegations, or "story." The question thus invites direct vouching of the child witness' allegations regardless of the child's motives. In any event although none of the expert witnesses' responses took the direct form of "I believe the child's story," or "In my opinion the child is telling the truth," Lawrence, 464 N.E.2d at 925, in light of our holding today their responses were comments on the child witness' truthfulness. And "[n]o witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." Barger, 587 N.E.2d at 1308 (quoting Stewart v. State, 555 N.E.2d 121, 125 (Ind. 1990)). The trial court thus erred in allowing the testimony into evidence over Hoglund's objection.

Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. Turner, 953 N.E.2d at 1059. In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable impact on the fact finder. Id. The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. Id. Moreover, "[a]ny error in the admission of evidence is not prejudicial, and [is] therefore harmless, if the same or similar evidence has been admitted without objection or contradiction." McCovens v. State, 539 N.E.2d 26, 30 (Ind. 1989).

We first observe there was substantial evidence of Hoglund's guilt apart from the erroneously admitted vouching testimony. A.H. testified at length concerning what happened to her at the hands of her father. And her testimony remained consistent and unshaken under aggressive cross examination. The testimony of a sole child witness is sufficient to sustain a conviction for molestation. Stewart v. State, 768 N.E.2d 433, 436 (Ind. 2002). Also, as noted above, although Hoglund made a "continuing objection" to the vouching testimony of Dr. Butler, Tr. at 82, he made but a single specific objection to the question posed to Ms. Shestak, namely "based on your contacts with the victim, did you perceive any indication that she may have fabricated the story about her abuse out of some need?" Tr. at 120. The court overruled the

objection and the witness testified as indicated above. After additional testimony, consuming over ten pages of transcript, the following exchange occurred:

> [Prosecutor]: Ms. Shestak, in your interviews and meeting with the victim, [A.H.], do you believe that she is prone to exaggerate or fantasize in sexual matters?
>
> [Shestak]: My clinical impression of this child was that there is a great deal of shame about what had happened to her and a great deal of anxiety about talking about it, about what would happen to her, what would happen to her dad if she talked and I did not feel there was any great exaggeration.
>
>           *       *       *
>
> [Prosecutor]: Did you learn anything from your interviews with the child that, which would be inconsistent with [A.H.] being the victim of a sexual abuse?
>
> [Shestak]: No, I did not.
>
>           *       *       *
>
> [Prosecutor]: And generally, not with regard to [A.H.], generally do you have an opinion on the credibility of child sexual abuse victims as a whole?
>
> [Shestak]: In general the research demonstrates and my clinical experience upholds that the majority of children who talk about having been sexually abused are giving truthful details and that it has happened to them.

Tr. at 133-34. Hoglund posed no objection to the foregoing testimony. In like fashion, Hoglund made but a single specific objection to the question posed to Dr. Mayle, "do you perceive any indication that [A.H.] may have fabricated this story of her abuse out of some need? Tr. at 180-81. The trial court overruled the objection and Dr. Mayle testified as previously indicated. The following exchange then occurred:

> [Prosecutor]: Have you worked with other sexually abused children?
>
> [Dr. Mayle]: Yes.

12

[Prosecutor]: Do you have any special training, experience or education in that area?

[Dr. Mayle]: Yes.

[Prosecutor]: Do you believe that, in your opinion do you believe that [A.H.] is prone to exaggerate or fantasize in sexual matters?

[Dr. Mayle]: I saw no indication of that.

Tr. at 181. Again Hoglund made no objection. "Failure to object at trial waives the issue for review unless fundamental error occurred." Treadway v. State, 924 N.E.2d 621, 633 (Ind. 2010). The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011). Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible. See id. at 1179. Here Hoglund makes no claim of fundamental error, and we find no such error to have occurred. Though the testimony of Ms. Shestak and Dr. Mayle did not draw an objection, its admission was not a blatant violation amounting to fundamental error.

As we have already determined, the State presented substantial evidence of Hoglund's guilt through A.H.'s testimony. Also, the record makes clear that the erroneously admitted expert testimony was cumulative of other testimony to the same effect by the same witnesses. "Even the erroneous admission of evidence which is cumulative of other evidence admitted without objection does not constitute reversible error." Wolfe v. State, 562 N.E.2d 414, 421 (Ind. 1990). Because Hoglund's conviction is supported by substantial independent evidence of his guilt, and because the improper admission of the evidence was cumulative of other evidence properly before the jury, we conclude the error in admitting the testimony was harmless.

**Conclusion**

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and David, JJ., concur.