# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PETER A. ROBERTS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  10A05-1301-CR-35 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1010-FB-651

**November 27, 2013**

**MEMORANDUM DECISION - FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Peter Roberts ("Roberts") appeals the trial court's assignment of credit time for his convictions of criminal confinement,[1] a Class D felony, and battery,[2] a Class C felony. Pursuant to Indiana Rule of Appellate Procedure 9(D), the State cross-appeals, contending that the trial court abused its discretion by awarding Roberts credit time for days spent on pre-trial home detention.

We affirm in part, reverse in part, and remand for resentencing.

ISSUE

1.  Whether the trial court abused its discretion by granting Roberts 305 days of credit for time served against his sentence on pre-trial home detention.

2.  Whether Roberts is entitled to good time credit for time spent released on pre-trial home detention.

FACTS

On October 16, 2010, at approximately 10:00 PM, twenty-five-year-old Elizabeth Davey ("Davey") arrived at Blackiston Mills Bowling with a group of friends. The group bowled together until around 12:30 A.M. Afterwards, Davey went alone to another section of the bowling alley to sing karaoke. Meanwhile, some of her friends continued to bowl while others went across the street to a friend's house.

Robert Schuler ("Schuler") was working as the disc jockey at the bowling alley that night. He and his wife, Mary Robinson ("Robinson"), had been working at the

---

[1] Ind. Code. § 35-42-3-3.
[2] Ind. Code. § 35-42-2-1.

bowling alley since approximately 9:00 P.M. Schuler and Robinson knew Davey through prior occasions when she sang karaoke, but, on that night, the couple had not seen Davey for approximately one year, so they talked with her about changes in her life, including Davey having a son, "J."

Davey sang three to four songs and sat by herself in a corner of the bar. Between two and three in the morning, as the bowling alley was closing, Davey sang the last song of the night. She walked to the exit, planning to retrieve possessions from her car and then walk to her friend's house across the street to spend the night. To exit the bowling alley, Davey had to walk through two sets of doors.

Roberts, the president of a bowling league at the alley, had been at the bowling alley since 6:30 P.M. He bowled three games and then went to the bar with some other members of the league. Roberts remained at the bar until approximately 2:30 A.M., when karaoke was ending. As Davey was leaving the bowling alley, Roberts was standing at the second set of doors at the exit and opened the door for Davey, who thanked him as she walked out of the alley. Davey had never previously met Roberts. While Davey walked to her car, Roberts came up behind her and picked her up off the ground, pinning her arms to her side. Davey asked Roberts "What's going on?" and Roberts instructed her to "keep quiet." (Tr. 188). Davey kicked her feet and was able to break loose, but Roberts fell on top of her, picked her up, and told her again to "be quiet." (Tr. 189).

3

Roberts carried Davey to the passenger side of his truck. Davey was still struggling and nearly managed to break free a second time, but when she realized that Roberts had a knife against her neck, she stopped struggling. Roberts pinned Davey against his truck with her face toward the vehicle. He began to cut Davey's neck with the knife, asking "Can you feel this?" (Tr. 190). Davey begged Roberts not to kill her and told him about her son J. (*Id*.).

By this time, Robinson was in the parking lot to bring her vehicle closer to the alley's doors so that her husband would have less distance to carry his stereo equipment. Robinson saw a small woman's flip-flop and "heard a muzzled sound, like a cry." (Tr. 39). As Robinson walked further into the parking lot, she heard "a cry for help" and then a woman saying "Please don't kill me; I don't want J[] to g[row] up without his mother." (Tr. 40). Robinson remembered her prior conversation with Davey about J. and remembered that Davey had been wearing flip-flops of that size. When Robinson reached her truck, she saw Roberts and Davey against Roberts' truck. Roberts removed something from his pocket and activated his truck's lights. After he did so, the lights "got real bright" and obstructed Robinson's vision. (Tr. 41).

Robinson drove her truck up to the alley's entrance to get her husband. During this time, Roberts had placed Davey into the front passenger seat of the truck and secured a rope around Davey's neck. He began tying the rope around her feet. Davey cried, and Roberts closed the truck's door. Robinson told her husband what she had witnessed and began screaming at her husband to go to Roberts' truck. Schuler alerted Roger Smith, an

4

employee at the bowling alley, to the situation. The two men then went to Roberts' truck and opened the passenger door. Roberts pulled the door shut and told the men "to stay out of it." (Tr. 93). Through the passenger window, Schuler saw Roberts on top of Davey with a knife in his hand and a rope around Davey's neck. Davey was screaming and kicking her legs. Schuler and Smith pulled Roberts off of Davey, and after Schuler restrained Roberts in a bear hug, Davey fled from the truck.

As Davey ran from the truck, she took the rope, which was tied like a noose, off from around her neck and dropped it onto the ground. Robinson called 9-1-1 from inside of her vehicle, and Davey ran into the bowling alley. Roberts struggled with Schuler and told Schuler to let him go. The Clarksville police was dispatched to the scene. When an officer arrived, Schuler, Smith, and the officer secured Roberts in handcuffs.

Detective Raymond Hall ("Det. Hall") with the Clarksville Police Department arrived at the scene after the men handcuffed Roberts. Paramedics attended to Davey, who suffered cuts to her hand and throat. Inside of Roberts' truck, Det. Hall found a knife on the center console and drops of blood in the vehicle.

The State subsequently charged Roberts with one count each of criminal confinement as a Class B felony, intimidation as a Class D felony, strangulation as a Class D felony, and battery as a Class C felony. Roberts spent 67 days in jail from the date of his arrest, October 16, 2010, until the date he posted as was released on bond and pre-trial home detention, December 21, 2010.

5

Following a jury trial on August 21-23, 2012, Roberts was convicted of battery, intimidation, and criminal confinement. Roberts spent thirty days in jail from the date of his conviction until the date of his sentencing.

On September 21, 2012, the trial court held a sentencing hearing at which it vacated Roberts' conviction for intimidation. The trial court sentenced Roberts to six years in the Indiana Department of Correction ("DOC"), and it granted Roberts 67 days for actual time served incarcerated prior to trial. Roberts subsequently filed a Motion to Correct Error and the trial court's amended judgment of conviction and sentence granted Roberts "409 actual days credit against his sentence comprised of 97 days in jail and 305 days for credit granted for house arrest detention prior to trial." (App. 238).

## DECISION

"Credit for time served" is defined as "the credit toward the sentence a prisoner receives for time actually served." *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999), *review denied*. "Good time credit" is "the additional credit a prisoner receives for good behavior and educational attainment." *Id*. Because Roberts appeals the trial court's decision on both types of credit, we will discuss each type in turn.

1.     Credit Time for Time Served on Pre-Trial Home Detention

Roberts first challenges whether the trial court properly credited him for 611 days of actual time served. Specifically, he contends that the trial court erred by halving his credit for actual time served with the expectation that the Department of Correction ("DOC") would award him good time credit for each day, thus having the practical effect

6

of giving him credit for 610 days, rather than 611. On cross-appeal, the State argues that Roberts is not entitled to any credit for actual time served for the days he spent on pre-trial home detention, and the trial court abused its discretion in awarding him that credit.

Under Indiana Code § 35-60-6-4, "[a] person who is not a credit restricted felon and who is imprisoned for a crime or confined awaiting trial or sentencing is initially assigned to Class I" for the purposes of assigning credit. In Class I, a person "earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing." Ind. Code § 35-50-6-3.

"Because pre-trial jail time credit is a matter of statutory right, trial courts generally do not have discretion in awarding or denying such credit," *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2011), *reh'g denied*. "However, those sentencing decisions not mandated by statute are within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion." *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012), *reh'g denied*. There is no statute that addresses credit for time served while on pre-trial home detention. *Molden*, 750 N.E.2d at 451. Therefore, we will review the trial court's decision for an abuse of discretion. *Id.*

As the State correctly points out, *Purcell* is controlling precedent. In that case, the Indiana Supreme Court explained that "a defendant is only entitled to credit toward sentence for pre-trial time served in a prison, jail, or other facility which imposes

substantially similar restrictions upon personal liberty." *Purcell*, 721 N.E.2d at 224, n.6. *See also Molden*, 750 N.E.2d at 451 ("Specifically, Molden argues here that because a convicted person serving his sentence on home detention is entitled to credit for time served toward a subsequent prison sentence if the court revokes the home detention under Indiana Code Section 35-38-2.6-5, a person in pre-trial home detention is likewise entitled to credit for time served against any eventual sentence. We cannot agree.") (internal citation omitted).

Therefore, the trial court would have been within its discretion to deny Roberts any credit for time served in pre-trial home detention. *See Lewis v. State*, 898 N.E.2d 1286, 1292 (Ind. Ct. App. 2009) ("We find no abuse of discretion in the trial court's determination that Lewis would not be awarded credit time for pre-trial home detention"); *Senn v. State*, 766 N.E.2d 1190, 1202 (Ind. Ct. App. 2002) ("[I]t is our determination that the trial court did not err when it refused to credit Senn's sentence for time served on home detention as a condition of pre-trial release"); *Molden*, 750 N.E.2d at 451 ("[W]e hold in this case that the trial court acted within its discretion when it denied Molden sentence credit for time spent in pre-trial home detention").

However, in the present matter, as both parties point out, the trial court attempted to give Roberts day-for-day credit against his sentence (rather than two-for-one credit time), by approximately halving the number of days he actually spent on pre-trial home detention with the expectation that the DOC would award him an equal number of credit time days. *See Robinson v. State*, 805 N.E.2d 783, 789-92 (Ind. 2004) (creating the

8

presumption that when a trial court reports only days spent in pre-trial confinement without designating credit time, the DOC should "automatically [] award the number of credit time days equal to the number of pre-sentence confinement days."). While the trial court is within its discretion in assigning Roberts credit against his sentence for the 611 days he spent on home detention, *Purcell*, 721 N.E.2d at 224, n.6, the problems with its method of achieving that result are two-fold. First, by only assigning Roberts credit for 305 actual days served, with the expectation that the DOC would double that number, the trial court's decision had the practical effect of giving Roberts credit for 610 days, rather than 611 days. Second, as the Indiana Supreme Court made clear in *Robinson*, if a trial court wishes to deny a defendant credit time, "[it] must report it in the sentencing judgment." *Robinson*, 805 N.E.2d at 789.

To properly deny Roberts two-for-one credit time and instead give him credit only for the actual number of days spent on pre-trial home detention, the trial court should have granted him 611 days actually served against his sentence and expressly denied him any credit time under Ind. Code § 35-50-6-3 for those days. Alternately, should the trial court wish to deny Roberts credit for any or all of the 611 days, it would be within its discretion to do so, *see Molden*, 750 N.E.2d at 451, but again, it would need to report the denial in its sentencing judgment. *Robinson*, 805 N.E.2d at 789. We therefore reverse the trial court's assignment of 305 days actual time served and remand for sentencing consistent with *Robinson* and this opinion.

2.      Good Time Credit for Time Spent Released on Bond in Pre-Trial Detention

9

Roberts next challenges the trial court's decision not to award him good time credit for the days he spent on pre-trial home detention. Specifically, Roberts recognizes that there is no basis for awarding him good time credit but argues that "[i]t is difficult, if not impossible, to explain why time spent on home detention as a condition of probation merits credit for time served and good time credit while credit for time spent on home incarceration prior to conviction is not worthy of equal treatment." (Roberts' Br. 13.)

This Court has explained previously the distinction between home detention pre- and post-conviction. In *Senn*, we were not persuaded that "home detention as a condition of pretrial release is 'upon the same terms' as home detention as a condition of probation," *Senn*, 766 N.E.2d at 1202, and nowhere does Roberts argue that he has established their equivalence. Furthermore, we have held previously that because "the potential consequences . . . are much more serious for a post-conviction violation than a pretrial violation," *Lewis*, 898 N.E.2d at 1291, pre-trial home detention is "not worthy of equal treatment." *Id*. at 1290. Roberts' argument on this ground is therefore unavailing.

Furthermore, as the State correctly points out, Roberts' reliance on this Court's recent decision in *Peterink v. State*, 971 N.E.2d 735 (Ind. Ct. App. 2012), *trans. granted, summarily aff'd*, 982 N.E.2d 1009 (Ind. 2013) (holding that good time credit was statutorily mandated for home detention as a condition of probation) is misplaced, as *Peterink* concerned only home detention as a condition of probation, not pre-trial home detention. Although Roberts also points to that case, in addition to the legislature's 2010 lifting of the good time deprivation in Ind. Code § 35-38-2.6-6 as "illustrat[ing] a change

10

in legislative direction justifying the crediting of time served or good time to all home detention, whether pre-sentence or post-sentence" (Roberts' Br. 12), we are not moved.

There is no basis in statute or case law for awarding good time credit to a defendant for time spent on pre-trial home detention. Indeed, Roberts recognizes that he is not entitled to good time credit, but he nonetheless persists in arguing that this Court should depart from precedent and award him such credit because he "can see no justification for Indiana's current statutes and caselaw [sic] to deprive him for credit for time served and the good time credit for the 611 days he spent on home detention prior to trial." (Roberts' Br. 13). We will not do so. Our standard of review is limited to an abuse of discretion, *Molden*, 750 N.E.2d at 451, and the trial court did not abuse its discretion by not awarding Roberts good time credit for the time he spent on pre-trial home detention. Accordingly, the trial court's decision on this issue is affirmed.

For the foregoing reasons, the trial court's decision is affirmed in part and reversed in part. The matter is remanded for resentencing consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and BARNES, J., concur.