Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2014, 6:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRIS P. FRAZIER**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SAMUEL L. KNOX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-CR-429 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila Carlisle, Judge
The Honorable Stanley Kroh, Commissioner
Cause No. 49G03-1301-FB-125

**January 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Samuel Knox appeals his conviction of Intimidation,[1] a class D felony. Knox was also convicted of residential entry and theft/receiving stolen property, both as class D felonies, as well as class A misdemeanor battery, but does not challenge those convictions in this appeal. Knox presents the following restated issues for review:

1. Did the trial court err in permitting the victim to testify about a telephone call placed to her by Knox?

2. Did the trial court err in denying Knox's motion for directed verdict with regard to the charge of intimidation?

We affirm.

The facts favorable to the convictions are that during the day on December 31, 2012, Knox spoke and texted with Shawntay Wray. Knox and Wray had recently broken off their relationship, and Knox told Wray he wanted to spend New Year's Eve with her and get back together again. She told Knox she was not interested in doing that. At approximately 1:00 a.m. on January 1, Wray was on her way home with a friend from a New Year's Eve party when she received a text from Knox stating, "Bitch I hope you burn." *Transcript* at 67. Wray was only a couple of minutes from her house at the time. When she arrived home, Wray saw Knox standing on her porch, and saw smoke and flames coming from the front door on her porch. She ran into her home, put out the fire, and returned to her friend's vehicle. Knox followed her into the vehicle, cursed at her, punched her in the head and arm twice, grabbed her cell phone, and exited the vehicle. Knox then entered his own vehicle and

---

[1] Ind. Code Ann. § 35-45-2-1 (West, Westlaw current through 2013 First Regular Session and First Regular Technical Session).

2

droveaway. Wray called the police and reported what had happened. Police arrived and took pictures of the door and the damage caused by the fire. Wray provided a description of Knox and told police where he lived.

After the police left, Wray went down to her basement. A short time later she heard her kids screaming, "He's back, he's back." *Id.* at 77. Knox had returned and entered her home. Wray attempted to hide, but Knox found her in the basement and chased her. She fell down and Knox began kicking and hitting her in the head. She was struck approximately twelve to thirteen times before he ceased the attack and went back upstairs. Before he left, Knox told Wray that if he could not have her, then nobody else was going to be with her. After he left, Wray called 911. The police returned to her house, and she reported what had occurred. Thirty to forty minutes later, police returned, showing Wray a cell phone, which she identified as belonging to her. They informed her that they had apprehended Knox.

Knox was charged with arson, intimidation, residential entry, theft, and battery. On or about January 18, 2013, while he was in jail, Knox phoned Wray. She described the phone call as follows:

> I asked him what did he call for? Why are you calling me? And he was like that he was sorry and all; that he was just hurt. And I was like, You tried to kill me and my kids. And he was like, be quiet. Be quiet before you – it was just like basically he's sorry and he was hurt and he was mad that I didn't spend New Year's with him.

*Id.* at 88. Knox had used another person's PIN number[2] to place the call and therefore the

---

[2] Each person in the jail has an individualized PIN number and phone calls may be searched and retrieved under that PIN number.

recording was not retrieved when police conducted a search for Knox's jail calls prior to trial. The State did not become aware of the phone call until the day before trial, as explained by the prosecuting attorney:

> [I]t was a January 18 jail call. And that's why we believed we had discovered it with that March 1 discovery notice where we provided all the calls. But inadvertently, not realizing it was done under a different pin, when it was discovered didn't realize that that had not been included. And that's why we discovered it, Judge, because we knew that he had made contact with the victim. … When we were informed by the victim that there had been contact from the jail, I asked [prosecuting attorney] Fellouka to pull all the jail calls and discover them. And inadvertently, not realizing that that particular call was made under a different pin, I had instructed him specifically, you know, to pull them all under [Knox's] name and any other associated calls that were made to her particular number, and that's where the error came in.

*Id.* at 28-29. The phone call was recorded, but because the State did not learn of the recording until the day before trial, it did not provide a copy of that recording to Knox until the day before trial.

On the day of trial, Knox's attorney moved to exclude the recording. Master Commissioner Stanley Kroh was presiding over trial that day. Master Commissioner Kroh indicated he would consider granting a continuance if defense counsel needed additional time to prepare in light of the lately discovered phone call. Defense counsel noted that Presiding Judge Sheila Carlisle had already ruled that she would not grant any more continuances in the case. Master Commissioner Kroh indicated he would talk to Judge Carlisle and determine whether she would change her mind about that ruling. After a brief conference with Judge Carlisle, Master Commissioner Kroh returned and, on the record, stated:

> I've had a chance to talk with the presiding Judge about the issue of the latest jail phone call, and the Court is changing its opinion and the Court's ruling that

4

it's excluded as it's discovered late. What I understand is the parties confirmed for jury just the other day, and so the Court's ordering that that latest jail phone call is excluded.

*Id.* at 34. After announcing that the court would not admit the tape recording of the phone call into evidence, the court indicated it would nonetheless allow Wray to testify about the telephone call.

The matter proceeded to trial by jury, after which Knox was found not guilty of arson, but guilty of the other four charges, as set out above.

1.

Knox contends the trial court erred in permitting Wray to testify about the January 18 telephone call Knox placed to her while he was in jail awaiting trial. Knox contends this ruling was significant because, he claims, Wray's testimony in this regard was the only evidence of guilt with respect to the charge of intimidation.

Generally, the admission of evidence at trial is a matter left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252 (Ind. 2013). We review the trial court's determinations in this regard for abuse of discretion, and reverse only when (1) admission is clearly against the logic and effect of the facts and circumstances and (2) the error affects a party's substantial rights. *Id*. "Trial courts have broad latitude with respect to matters of this sort and their rulings receive great deference on appeal." *Cain v. State*, 955 N.E.2d 714, 718 (Ind. 2011).

We begin by noting that the trial court excluded the recording on grounds that its late introduction constituted a violation of the trial court's discovery order. The State contends

this decision was erroneous. We agree. "Exclusion of evidence is only appropriate if the defendant shows 'that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial.'" *Id.* (quoting *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 1982)). In announcing its decision that it would not permit the introduction of the recording into evidence, but would permit Wray to testify about the phone call, the court stated,

> From what the Court's heard, [Knox] told [Wray] don't talk about this on the telephone. While that part – the phone call itself is not coming in. But, you know, *I don't see there's any bad faith on the part of the State.* This is something they weren't aware of. I'm learning that maybe it's something they may be should have known about, *but I can't find it's bad faith on the part of the State.* It's not something they hid.

*Transcript* at 37-38 (emphasis supplied). Our review of the transcript leads us to a conclusion similar to that of the trial court, i.e., the eleventh-hour attempt to admit the recording into evidence was not a product of bad faith on the State's part. Therefore, the evidence should have been admitted.

Be that as it may, and even assuming for the sake of argument that the trial court erred in permitting Wray to testify about the January 18 phone conversation with Knox, any error in the admission of that evidence was harmless. We disregard errors in the admission of evidence unless they affect the substantial rights of a party. *Clark v. State*, 994 N.E.2d 252. In reviewing the effect of an evidentiary ruling on the defendant's substantial rights, we consider the probable impact of the ruling on the factfinder. *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012). "The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no

6

substantial likelihood the challenged evidence contributed to the conviction." *Id.* at 1238.

In order to convict Knox of intimidation, the State was required to prove that he communicated a threat to another person with the intent that the other person be placed in fear of retaliation for a prior lawful act. I.C. § 35-45-2-1. The intimidation charge against Knox was based upon threats he communicated to Wray on January 1, 2013, when she refused to rekindle their relationship. Specifically, he sent her a text message stating, "I hope you burn, bitch", and said to her in a conversation, "Bitch, if you don't want to be with me, you're not going to be with anybody." *Appellant's Appendix* and 30. The charging information alleged that these threats were intended to place Wray "in fear of retaliation for a prior lawful act, said prior lawful act being terminating her relationship with" Knox. *Id.* The challenged testimony apprised the factfinder that Knox did what he did on the morning of January 1, 2013, because he was angry and dismayed by Wray's refusal to take him back. There was, however, other properly admitted evidence tending to prove the same thing.

Wray testified that Knox had asked her on December 31 if she would spend New Year's Eve with him, and indicated he wanted to get back together with her again. She told him she was not interested in doing that. There was properly admitted evidence that, shortly thereafter, Knox sent her a text stating, "Bitch I hope you burn." *Transcript* 67. When Wray arrived home a few minutes later, she saw that Knox was standing at her front door and her front porch was on fire. Later, as he was beating her in her basement, he told her that if he could not have her, then no one else would have her. This evidence of Knox's motivation for doing what he did on January 1 was of such a compelling character that we are satisfied there

7

is no substantial likelihood that Wray's testimony about the January 18 phone call contributed to the jury's determination that Knox communicated a threat to Wray in order to place her in fear of retaliation for refusing to enter into a relationship with him again. Therefore, the error, if any, was harmless. The trial court did not commit reversible error in permitting Wray to testify about the January 18 phone call.

2.

Knox contends the trial court erred in denying his motion for a directed verdict on the intimidation count. The denial of a motion for a directed verdict cannot constitute error if the evidence is sufficient to support a conviction on appeal. *Huber v. State,* 805 N.E.2d 887 (Ind. Ct. App. 2004). Our standard of review for challenges to the sufficiency of evidence is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted).

As indicated previously, in order to convict Knox of intimidation, the State was required to prove that he communicated a threat to Wray with the intent that she be placed in fear of retaliation for a prior lawful act. I.C. § 35-45-2-1. Knox contends the State failed to prove that Wray committed a prior lawful act that prompted Knox to retaliate. This is the

8

only element of the offense of intimidation that Knox claims was not supported by the evidence. Wray testified that Knox had asked her on New Year's Eve day to resume their romantic relationship, and she declined. He asked her to spend New Year's Eve with him, and she declined. While on her way home from a New Year's Eve party, Wray received a text from Knox stating, "Bitch, I hope you burn." *Transcript* at 67. When she arrived home approximately two minutes later, Knox was on her front porch and her front door was on fire. Knox then physically attacked Wray when she was in her friend's car. Knox left the scene, but returned a short time later, by which time Wray was in her basement. Knox entered Wray's home without permission and sought her out in the basement. There, he beat her while stating that if he could not have her, no one else could either. This evidence permits a reasonable inference that Knox set fire to Wray's dwelling and attacked her as a result of her refusal to reengage in a romantic relationship with him. Therefore, the evidence was sufficient to support the conviction for intimidation, and the trial court did not err in denying Knox's motion for directed verdict.

Judgment affirmed

KIRSCH, J., and BAILEY, J., concur.