## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 15 2017, 8:48 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyree Brodley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 15, 2017 <br><br> Court of Appeals Case No. 49A02-1603-CR-613 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila Carlisle, Judge <br><br> Trial Court Cause No. 49G03-1405-MR-25053 |

**Pyle, Judge.**

## Statement of the Case

Tyree Brodley ("Brodley") appeals his conviction of murder[1] following a bench trial. His sole contention is that the trial court committed fundamental error in admitting DNA evidence. Concluding that any error in the admission of this evidence was harmless because the conviction was supported by substantial independent evidence of Brodley's guilt and that this evidence was cumulative of other evidence properly admitted, we affirm Brodley's conviction.

We affirm.

## Issue

The sole issue for our review is whether the trial court committed fundamental error in admitting DNA evidence.

## Facts

The evidence most favorable to the verdict reveals that on May 9, 2014, Brodley and Pashae Beech ("Pashae"), who were the parents of an infant, became involved in a verbal argument. At about 5:00 p.m., Pashae telephoned her mother, Janette Beech ("Beech"), and asked her to come over and take care of the baby. When Beech arrived, Pashae and Brodley were yelling and cursing at each other. Beech joined the argument and began "really cussing" at Brodley. (Tr. 51).

---

[1] IND. CODE § 35-42-1-1.

[4] Shortly thereafter, Beech's son, Ahmed ("Ahmed"), and his friend Terrance Holmes ("Holmes"), arrived. Holmes and Pashae were close friends. Brodley, who feared that Holmes and Ahmed were going to "jump" him and who believed that Ahmed had previously stolen from him, grabbed two guns and left the house. (Tr. 66). At that time, Brodley was wearing a white tank top. At some point thereafter, Holmes and Ahmed also left the house.

[5] At approximately 9:00 p.m. that night, Len Thompson glanced out the window of his used auto sales office and noticed a group of men standing on the street corner. One of the men in this group was Holmes. Suddenly, the group separated into two smaller groups, and a man in a white tank top shot Holmes. Michael Dilley also saw the man in the white tank top shoot Holmes. When Holmes fell to the ground, "all hell broke loose." (Tr. 199). Twenty to thirty shots went off, and the man in the white tank top took off running. He quickly "broke stride" and looked as if he had been shot and was going to fall. (Tr. 201).

[6] Indianapolis Metropolitan Police Department ("IMPD") Officer Michael Leeper found Brodley in an alley. Brodley had been shot in the leg. Holmes was found dead nearby. He had been shot three times with a .40 caliber gun. Officers found four different handguns at the scene, one of which was a Glock Model 27 .40 caliber semi-automatic handgun ("the Glock handgun"). The Glock handgun was found near Brodley.

When IMPD Officer Phillip Robinett ("Officer Robinett") arrived at the scene, he recognized Brodley. Medics were just starting to cut off Brodley's white tank top, which had blood on it. Officer Robinett also noticed beside Brodley a cell phone, which contained pictures of Brodley, his infant, and a Glock handgun with the serial number of the Glock handgun that was found at the scene.

The State charged Brodley with Holmes' murder. Dr. Muhammad Amjad ("Dr. Amjad") performed DNA testing on the white tank top, but he did not testify at Brodley's bench trial. Rather, laboratory supervisor Shelley Crispin ("Crispin"), who reviewed Dr. Amjad's data and wrote the report, testified without objection that DNA testing revealed that the blood on the white tank top matched Brodley's DNA. Also at trial, Beech and Detective Robinett both testified that Brodley had been wearing a white tank top. The trial court convicted Brodley of murder and sentenced him to fifty-five (55) years. Brodley appeals his conviction.

## Decision

Brodley's sole contention is that the trial court erred in admitting Crispin's testimony that DNA testing revealed that the blood on the white tank top matched Brodley's DNA. Specifically, he argues that the "results of the DNA testing in this case violated Brodley's Sixth Amendment rights to confrontation" because the "State called the laboratory control supervisor, Crispin, to testify about the unsworn hearsay testimony of the testing analyst, Dr. Amjad, instead of having Dr. Amjad testify and be available for cross-examination." (Tr. 11, 17). According to Brodley, he "had the right to

confront [Dr. Amjad] about his methodology and the results that flowed from it. Crispin had no personal knowledge about Dr. Amjad's actions nor did she observe his testing. She could only rely on the data Dr. Amjad created." (Tr. 16).

[10] Brodley, however, failed to object at trial to the admission of the DNA evidence. In order to preserve an issue for appeal, a contemporaneous objection must be made when the evidence is introduced at trial. *Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012), *trans. denied*. If no such objection is made, the issue is waived for appellate review. *Id.* Nevertheless, Brodley claims the admission of this evidence amounted to fundamental error.

[11] The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Id.* In order to be fundamental, the error must represent a "blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Id.* Further, this exception is available only in egregious circumstances. *Palilonis*, 970 N.E.2d at 730.

[12] Here, Brodley has failed to allege or show how the admission of the DNA evidence made a fair trial impossible and why the circumstances in this case were egregious. Further, even if the trial court had erred in admitting the

evidence, any error in the admission of evidence is to be disregarded unless it affects the substantial rights of a party. *See Hoglund*, 962 N.E.2d at 1238. In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable impact on the fact finder. *Id.* The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood that the challenged evidence contributed to the conviction. *Id.* In addition, any error in the admission of evidence is not prejudicial, and it is therefore harmless, if the same or similar evidence has been admitted without objection or contradiction. *Id.*

[13] Here, we first observe that there was substantial evidence of Brodley's guilt apart from the DNA evidence. Specifically, Brodley left his home with guns after thinking that Holmes and Ahmed had come over to "jump" him. (Tr. 66). Brodley was wearing a white tank top. Later that evening, two witnesses saw a man in a white tank top shoot and kill Holmes. The gun used to kill Holmes was found near Brodley. Further, a picture of a gun with the same serial number as the gun used to kill Holmes was found on a phone that also contained photographs of Brodley and his infant. In addition, the DNA evidence was cumulative of Beech's and Officer Robinett's testimony that Brodley was wearing a white tank top. Because Brodley's conviction is supported by substantial independent evidence of his guilt and because the DNA evidence was cumulative of other evidence properly before the trier of fact, we conclude that any error in the admission of this evidence was harmless.

Affirmed.

Baker, J., and Mathias, J., concur.