## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 6:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kashif Allen Weathers, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 28, 2017 <br><br> Court of Appeals Case No. <br> 82A01-1608-CR-1751 <br><br> Appeal from the Vanderburgh <br> Superior Court <br><br> The Honorable Robert J. Pigman, <br> Judge <br><br> Trial Court Cause No. <br> 82D03-1507-F3-4244 |

**Pyle, Judge.**

## Statement of the Case

Kashif Allen Weathers ("Weathers") appeals, following a jury trial, his convictions for Level 3 felony rape[1] and Level 6 felony criminal confinement.[2] Weathers argues that the trial court committed fundamental error by admitting the testimony of a detective. Concluding that Weathers has failed to show that the trial court committed fundamental error, we affirm Weathers' convictions.

We affirm.

## Issue

> Whether the trial court committed fundamental error by admitting the testimony of a detective.

## Facts

On July 17, 2015, B.A., a woman that Weathers had been dating for two months, told Weathers that she was pregnant with another man's baby. After arguing for twenty-five to thirty minutes, Weathers "pushed [B.A.] down on the bed" and told her to give him a hug. (Tr. 17). He tried to kiss B.A., but she refused to kiss him back and "push[ed] him away telling him no." (Tr. 18). Weathers then "pull[ed] [B.A.'s] pants down and just forced himself inside of [her]" for three to four minutes. (Tr. 17). B.A. repeatedly told Weathers to stop. She shouted, "Get off me, no, stop." (Tr. 19). After B.A. was eventually

---

[1] IND. CODE § 35-42-4-1.

[2] I.C. § 35-42-3-3.

able to "kick[] him off of [her,]" she pulled up her pants and grabbed her purse and keys to leave the house. (Tr. 17). As B.A. was trying to use her phone, Weathers grabbed it from her hand and threw it down. He then "pinned [B.A.] up against the wall" so that she "couldn't move[,]" and he held her there for five to ten minutes. (Tr. 20).

[4] Once B.A. was able to get away, she and two friends went to a nearby Taco Bell, where she knew a police officer would be on duty, and she reported to the officer what Weathers had done to her. B.A. then went to the hospital for an examination. While at the hospital, B.A. spoke with Evansville Police Detective Brian Turpin ("Detective Turpin") and gave the detective a handwritten statement.

[5] The following day, Detective Turpin conducted a videotaped interview with Weathers. During the interview, Weathers stated that he and B.A. were arguing so he laid on top of her, got her pants off, and started to have sex with her to "get her mind off of it" and "change her mind." (State's Ex. 2). Weathers acknowledged that B.A. had told him "no" and that he had inserted his penis inside her "part of the way." (State's Ex. 2). He also admitted that he had prevented B.A. from leaving the house by putting his arm around her and that he had grabbed her phone from her and thrown it. Detective Turpin told Weathers that he could write an apology letter to B.A., and Weathers wrote the following letter:

> [B.A.] i'm so sorry for Holding you from leaving the House I
> should have never done that. Im sorry that i was trying to have

sex with you while you was mad I should have tryed to do it another way then that i would never try to rape you or anybody else i'm so sorry that it went down this way tonite idk what i was thinking or what you was thinking so can you just forgive me ☺ if you never want to talk to me agian i will understand but dont be mean to me over a argurment that we had cuz im really not a bad person and you know it im so "sorry"

Love ♡

Kashif. W.

(State's Ex. 3) (misspellings, capitalization errors, and lack of punctuation in original).

[6] The State charged Weathers with Level 3 felony rape and Level 6 felony criminal confinement. The trial court held a jury trial on June 13, 2016. During Detective Turpin's direct examination, the State introduced—without objection—the recording of Weathers' police interview (State's Ex. 2) and the apology letter that Weathers wrote to B.A. (State's Ex. 3).[3] After the admission of this evidence, Detective Turpin testified—without objection—that he had been trained to use the letter writing method and that he used this method because "people that are innocent don't write apologies to people that they've been accused of wronging so you know it just shows guilt in those cases so . . ." (Tr. 83-84). During cross-examination, Weathers' counsel asked Detective Turpin if the purpose of having Weathers write the apology letter was to "build

---

[3] In fact, Weathers' counsel specifically stated that he had "[n]o objection" to the admission of State's Exhibits 2 and 3. (Tr. 79, 83).

up [his] file," and the detective responded that "it's to show that an innocent person wouldn't apologize." (Tr. 107).

[7] Weathers' defense at trial to the rape charge was that he and B.A. had engaged in consensual sex. He did not, however, raise a defense to the criminal confinement charge. In fact, during closing arguments, Weathers' counsel told the jury that the State had "proven their case" on the criminal confinement charge and that the jury "c[ould] sign the guilty form on that one with confidence" because Weathers had "confessed to that crime" in his apology letter, State's Exhibit 3. (Tr. 134). Weathers' counsel argued that Weathers' apology letter was not a confession to the rape charge, and he reminded the jury that it had the right to accept or reject the evidence presented.

[8] The jury found Weathers guilty as charged. The trial court imposed a nine (9) year sentence for Weathers' rape conviction and eighteen (18) months for his criminal confinement conviction, and it ordered that these sentences be served concurrently in the Indiana Department of Correction. Weathers now appeals.

## Decision

[9] Weathers argues that the trial court committed fundamental error by admitting certain testimony of Detective Turpin. Specifically, Weathers challenges two statements made by the detective—one during direct examination and one during cross-examination—and argues that his statements were opinions of guilt that should have been excluded from evidence under Indiana Evidence Rule 704(b). He contends that both of his convictions should be vacated.

[10] Weathers acknowledges that he did not object to the testimony at trial. His failure to object to the testimony results in waiver of any argument regarding its admissibility. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) ("Failure to object at trial waives the issue for review unless fundamental error occurred."), *reh'g denied*. Weathers recognizes this procedural default and argues that the admission of the testimony constituted fundamental error.

[11] "The fundamental error exception is extremely narrow[] and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (internal quotation marks omitted). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Hoglund*, 962 N.E.2d at 1239. The fundamental error exception is "available only in 'egregious circumstances.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)), *reh'g denied*. "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*.

[12] We decline to review Weathers' fundamental error claim relating to the admission of Detective Turpin's cross-examination testimony because Weathers

invited the error he now claims is fundamental. "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995), *reh'g denied*. In contrast to fundamental error, "the 'doctrine of invited error is grounded in estoppel[]' and forbids a party to 'take advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct.'" *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)), *reh'g denied*, *cert. denied*. "[F]undamental error gives [appellate courts] leeway to mitigate the consequences of counsel's oversights, but invited error precludes relief from counsel's strategic decisions gone awry." *Brewington*, 7 N.E.3d at 975.

[13] Here, Weather's counsel specifically asked Detective Turpin to explain the purpose of having Weathers write an apology letter. The detective's testimony, of which Weathers now complains, was in response to his counsel's question. Because Weathers invited the detective's cross-examination testimony and "[i]nvited errors are not subject to appellate review[,]" we will not review his challenge to that testimony. *Kingery*, 659 N.E.2d at 494 (rejecting the defendant's fundamental error claim where he elicited the testimony that he was attempting to challenge on appeal).

[14] Turning to Weathers' challenge to the admission of Detective Turpin's direct examination testimony, we conclude that he has failed to meet his burden of showing fundamental error. Weathers has failed to show how the admission of

the detective's direct examination testimony made a fair trial impossible and why the circumstances in this case were egregious.

[15] Indeed, even if the trial court had erred in admitting the testimony, any "error[] in the admission of evidence [is] to be disregarded unless [it] affects the substantial rights of a party." *Hoglund*, 962 N.E.2d at 1238. "The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id.* Additionally, "'[a]ny error in the admission of evidence is not prejudicial, and [is] therefore harmless, if the same or similar evidence has been admitted without objection or contradiction.'" *Id.* (quoting *McCovens v. State,* 539 N.E.2d 26, 30 (Ind. 1989)).

[16] Here, there was substantial evidence apart from the detective's direct examination testimony that leads us to conclude that there is no substantial likelihood the challenged evidence contributed to the conviction. Specifically, B.A. testified that, after she and Weathers had been arguing, he pushed her on the bed, tried to kiss her, and told her to give a hug. B.A. refused, pushed away, and told him no; however, Weathers "pull[ed] [B.A.'s] pants down and just forced himself inside of [her]" for three to four minutes. (Tr. 17). B.A. repeatedly told Weathers to stop. After B.A. was eventually able to get Weathers off of her, he then prevented her from leaving the house. Specifically, Weathers, "pinned [B.A.] up against the wall" so that she "couldn't move[,]" and he held her there for five to ten minutes. (Tr. 20). During closing

argument, Weathers' counsel conceded that Weathers was guilty of the criminal confinement offense and told the jury that it "c[ould] sign the guilty form on that one with confidence" because Weathers had "confessed to that crime" in his apology letter, State's Exhibit 3. (Tr. 134). Furthermore, Weathers does not challenge the admission of his apology letter written to B.A. (State's Exhibit 3)—in which he admitted that he held her and prohibited her from leaving the house and that he was sorry for having sex with her when she was mad and should have done it differently. Nor does he challenge the admission of his recorded police statement (State's Exhibit 2)—in which he conceded that B.A. told him "no" two or three times and that he inserted his penis in her in an effort to "change her mind." (State's Ex. 2). Because there was substantial independent evidence of Weathers' guilt, we conclude that any error in the admission of the detective's direct examination testimony was harmless and did not constitute fundamental error. *See, e.g.*, *Palilonis v. State*, 970 N.E.2d 713, 731 (Ind. Ct. App. 2012) (concluding that the admission of improper vouching testimony was harmless error and not fundamental error).

[17] Affirmed.

Baker, J., and Mathias, J., concur.