## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/06/2017, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald Charles Freeman, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 6, 2017

Court of Appeals Case No.
82A01-1701-CR-19

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-1601-F3-240

**Bailey, Judge.**

# Case Summary

[1]    Donald Charles Freeman, Jr., ("Freeman") appeals his convictions, following a jury trial, and his sentence for armed robbery, as a Level 3 felony;[1] resisting law enforcement, as a Level 6 felony;[2] and resisting law enforcement, as a Class A misdemeanor.[3]

[2]    We affirm Freeman's convictions, and remand for clarification of sentencing.

# Issues

[3]    Freeman raises three issues on appeal which we restate as follows:

> I. Whether the trial court abused its discretion when it admitted Exhibit 37, an Alcohol, Tobacco, and Firearms ("ATF") firearms trace summary.
>
> II. Whether Freeman's two convictions for resisting law enforcement violate the prohibition against double jeopardy under the Indiana Constitution.
>
> III. Whether the trial court should clarify its sentencing order to provide that all sentences in this cause run concurrently to each other and consecutively to cause number 82C01-1301-FB-34.

---

[1] Ind. Code § 35-42-5-1(1) (2016).

[2] I.C. § 35-44.1-3-1(b)(1)(B).

[3] I.C. § 35-44.1-3-1(a)(3).

# Facts and Procedural History

[4]     In January 2016, Dolton Borders ("Borders") arranged to deliver three grams of marijuana to an unknown buyer. Borders drove to a liquor store on Fulton Avenue in Evansville on the evening of January 8, 2016, to meet the buyer.

[5]     Also on the evening of January 8, Trenton Terrell ("Terrell") was with his girlfriend, Shelby Carnes ("Carnes"), driving Carnes' Nissan Juke in Evansville. Terrell dropped off Carnes at Dick's Sporting Goods ("Dick's") and proceeded to the South side of Evansville to meet Freeman and another individual named Isaiah. Freeman and Isaiah got into the vehicle, and Terrell drove the three of them back to Dick's to pick up Carnes. At Dick's, Carnes got into the front passenger seat, Freeman sat behind her, Isaiah sat in the rear driver's side seat, and Terrell continued to drive.

[6]     Terrell drove to Fulton Avenue and stopped at the liquor store. Freeman then exited the vehicle and approached Borders, who had already arrived at the liquor store and was waiting in his vehicle. Freeman got into Borders' vehicle, and Borders showed Freeman the marijuana. Freeman pulled out a scale and weighed the marijuana. Freeman then pulled out a gun, took the marijuana, and demanded Borders' wallet. Borders stated that he did not have his wallet, and Freeman stated that he wanted Borders to show him that he did not have a wallet. As Borders rose out of his seat to comply with Freeman's demand, Freeman saw that Borders had a holstered handgun. Borders' handgun was a nine-millimeter Smith & Wesson. While pointing his own gun at Borders,

Freeman took Borders' gun from him and exited Borders' vehicle. Borders then called 9-1-1 and reported that he had been robbed.

[7] Freeman got back into Carnes' vehicle and told Terrell, "I got it." Tr. Vol. III at 89. Terrell then drove on Fulton Avenue toward downtown Evansville. Meanwhile, officers with the Evansville Police Department ("EPD") were dispatched to Fulton Avenue in response to Borders' 9-1-1 call. When Terrell turned from Fulton Avenue onto Riverside Drive, several police cars pulled up behind him and signaled for him to stop.

[8] When Terrell stopped the vehicle, Freeman exited from the back passenger side of the vehicle and ran. EPD K-9 Officer Douglas Bueltel commanded Freeman to stop, but Freeman continued to run. Officer Bueltel then opened the door of his vehicle and gave his canine, Gero, the command to apprehend Freeman. EPD Officer Zach Elfreich observed Freeman running from the other officers, and followed Freeman in his vehicle. Near the "Spudz-N-Stuff" at Vine and First Streets, Officer Elfreich saw Gero catch up with Freeman and grab onto Freeman with a bite, but Freeman tried to continue running with Gero holding onto his leg. Officer Elfreich then got out of his vehicle and ordered Freeman to get on the ground. When Freeman did not comply with this command, Officer Elfreich ran after Freeman and tackled him to the ground. Officer Elfreich told Freeman several times to put his hands behind his back, but Freeman did not comply and instead swung around and attempted to push Officer Elfreich off. Freeman then struck Officer Elfreich in the face, causing injury to Officer Elfreich's face.

[9] The EPD found a .22 caliber handgun under the front passenger seat of Carnes' vehicle, and the gun was plainly visible from the backseat area. The police also found a metal fifteen-round Smith and Wesson magazine and a digital scale lying on the ground next to the passenger's side of Carnes' vehicle. The police found the nine-millimeter Smith & Wesson handgun at Vine and First Streets, where Freeman had been apprehended, approximately two blocks east of where the police stopped Carnes' vehicle.

[10] The State charged Freeman with Count I, armed robbery, as a Level 3 felony; Count II, battery against a police officer, as a Level 5 felony;[4] Count III, resisting law enforcement, as a Level 6 felony; Count IV, carrying a handgun without a license, as a Class A misdemeanor;[5] Count V, resisting law enforcement, as a Class A misdemeanor; and Count VI, possession of marijuana, as a Class B misdemeanor.[6] Freeman's jury trial was held on November 9 and 10, 2016.

[11] At the trial, Borders testified that Freeman had stolen Borders' gun on January 8, 2016. Borders described his gun as a "Smith and Wesson SD9 [with] a black handle on it and the top part of it is silver." Tr. Vol. III at 114. Borders then

---

[4] I.C. § 35-42-2-1.

[5] I.C. § 35-47-2-1.

[6] I.C. § 35-48-4-11.

identified State's Exhibit 11 as a picture of his gun. Borders testified that his guardian, Kenneth McElwee, had purchased the gun for Borders.

[12] EPD Officer Aaron Bourland, a crime scene detective, also testified. He stated that he found the Smith and Wesson handgun at Vine and First Streets, "a block or two" east of where the police stopped Carnes' vehicle on January 8, 2016. *Id*. at 34-35. Officer Bourland photographed the gun and sealed it as evidence. He identified State's Exhibit 11 as the photograph he took of the Smith and Wesson handgun where it was found, and he identified State's Exhibit 34, admitted without objection, as the gun itself. He identified State's Exhibit 12 as the photograph he took of the magazine that he found on the ground outside of the passenger side of Carnes' vehicle. He testified that the magazine photographed in Exhibit 12 fit the gun in Exhibit 34.

[13] Officer Bourland also testified that he ran firearms traces through the Alcohol, Tobacco, and Firearms ("ATF") division of the federal government on the Smith and Wesson handgun in Exhibit 34 and the .22 caliber gun found under the seat of Carnes' vehicle. He testified that the Smith and Wesson handgun "was traced through the ATF, the Smith & Wesson 9 millimeter, it was purchased by a Kenneth Ray, the last name is M C E L W E E, it was bought here in Evansville in October 29, 2015." *Id*. at 60. Officer Bourland testified that State's Exhibit 37 was the ATF summary regarding the trace of the Smith and Wesson handgun, and Exhibit 36 was the ATF summary regarding the trace of the .22 caliber handgun. He explained the way in which he obtained the trace summaries on the two handguns:

OFFICER BOURLAND: I have a login and password through the ATF, I submit the information that's located on the firearm, including the model, the serial number, and other identifying marks, they then do a trace on the firearm and they send it back to me which I then attach to RMS under the case number.

* * *

PROSECUTOR: And then with regard to RMS, what is RMS?

A: It is our system for record keeping where we do reports, it's basically where we attach and do everything that we do in terms of documentation.

Q: Who has access to the ATF gun registration data base?

A: I, do you mean in terms of what I send off?

Q: Well, who generally has access, can I get there, can I buy a password?

A: You cannot, we have credentials being crime scene detectives to be able to do that.

*Id.* at 60-61.

[14] The State moved to admit Exhibits 36 (the ATF summary on the .22 caliber handgun) and 37 (the ATF summary on the Smith and Wesson handgun). Defendant did not object to the admission of Exhibit 36 (stating, "36 is fine," *Id.* at 62), but objected to the admission of Exhibit 37 on the grounds that "it includes some information that I think isn't relevant on this case and I would

ask that it be redacted on that part based on this witness['] testimony."[7]  *Id.*  The State responded that it would redact the information to which the defendant objected, and the defendant responded, "I have no problem with the three lines in question being redacted."  *Id.*  Defendant's objection to Exhibit 37 was sustained pending redaction.

[15]  The State subsequently moved to admit a redacted version Exhibit 37[8] after Borders' testimony regarding where his guardian had purchased the Smith and Wesson handgun.  The defendant objected on the following grounds:  "[T]he foundation hasn't been laid for anything other than the fact that this witness purchased the gun from Rural King, the rest of the information in this report hasn't been authenticated, the foundation hasn't been laid for this to come in to evidence with this witness."  *Id.* at 127.  The State responded that Officer Bourland's previous testimony had laid the foundation for the report in Exhibit 37.  The trial court admitted the exhibit.

[16]  The jury found Freeman guilty of counts I, III, IV,[9] and V.  The jury found Freeman not guilty of count II, and the trial court dismissed count VI upon the

---

[7]  The Defendant apparently objected to the information under the heading "Recovery Information," which was subsequently redacted in the admitted exhibit.  State's Exhibits 37 and 37-A.

[8]  Two versions of the ATF trace summary on the Smith and Wesson handgun were admitted into evidence: an unredacted version was admitted as Exhibit 37, and a redacted version was admitted at Exhibit 37-A.  For ease of reference, we refer to Exhibit 37 throughout this opinion since the issue of redaction is not relevant to this appeal.

[9]  Freeman does not appeal his conviction for count IV, carrying a handgun without a license, which related to Freeman's own gun.

State's motion. On December 2, 2016, the trial court sentenced Freeman to nine (9) years under count I; two (2) years under count III; and one (1) year each under counts IV and V. The trial court ordered that "[a]ll the counts are to run concurrently" for an aggregate sentence of nine years and that the sentence in the instant case, "1601-F3-240, is to run consecutive to the sentence in 1301-FB-34." Tr. Vol. II at 11. However, the written sentencing order checks boxes for both "concurrent" and "consecutive" for each count. Appellant's App. Vol. II at 118. And the abstract of judgment says, for each count: "Consecutive: 82C01-1301-FB-34[;] Concurrent: Counts." *Id*. at 120.

[17]  Freeman now appeals his convictions for one count of armed robbery and two counts of resisting law enforcement and seeks clarification of his sentence.

# Discussion and Decision

## Admissibility of ATF Firearms Trace Summary

[18]  Freeman contends that the trial court erred in admitting Exhibit 37, an ATF firearms trace summary on the nine-millimeter Smith and Wesson handgun, which showed that Border's guardian purchased the handgun approximately two months prior to the date of the crime. We review a trial court's admission or exclusion of evidence for an abuse of discretion, "which occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007) (citation omitted). However, the State asserts that Freeman has

waived an appeal of the admission of Exhibit 37 on lack-of-foundation grounds because he failed to raise that objection below. We agree.

[19] As we have recently held,

> [l]itigants may not object in general terms but must state their objections with specificity. *Espinoza v. State*, 859 N.E.2d 375, 384 (Ind. Ct. App. 2006). Any grounds for objections not raised at trial are not available on appeal, and a party may not add to or change his grounds in the reviewing court. *Treadway v. State*, 924 N.E.2d 621, 631 (Ind. 2010). A claim of evidentiary error may not be raised for the first time on appeal but rather must first be presented at trial in order to permit consideration of the objection and appropriate corrective action by the trial court. *Stephenson v. State*, 29 N.E.3d 111, 121 (Ind. 2015).

*Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied*. In *Hunter*, the defendant had objected at trial to the admission of recordings of a drug buy on lack-of-foundation grounds only on the bases that there was confusion as to the date on the exhibit and as to the confidential informant's mark on the exhibit. On appeal, the defendant contended the exhibit lacked a proper foundation only because the confidential informant did not testify that the recordings were true and accurate representations of the scene at the time of the drug buy. However, we held that the defendant had waived the latter lack-of-foundation claim because he had failed to object on that basis before the trial court. *Id.*

[20] As in *Hunter*, Freeman has waived his contention that Officer Bourland's testimony failed to lay a proper foundation for Exhibit 37 because he failed to

make that objection in the trial court. Rather, Freeman's only objection to the introduction of Exhibit 37 through Officer Bourland's testimony was that the exhibit contained some irrelevant information that should be redacted. And, although Freemen objected to the introduction of the exhibit through Borders because "the foundation hasn't been laid for [Exhibit 37] to come in to evidence *with this witness*," Tr. Vol. III at 127 (emphasis added), that objection did not relate in any way to the foundation laid for the exhibit by Officer Bourland's testimony.[10] Freeman may not on appeal change the basis for his objections to the admission of Exhibit 37. *Hunter*, 72 N.E.3d at 932.

[21] Waiver notwithstanding, even if we assume that the trial court erred in admitting Exhibit 37, the error was harmless.

> Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Turner* [*v. State*], 953 N.E.2d [1039,] 1059 [(Ind. 2011)]. In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable impact on the fact finder. *Id*. The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id*. Moreover, "[a]ny error in the admission of evidence is not prejudicial, and [is] therefore harmless, if the same or similar

---

[10] In fact, Freeman had no objection to the admission, through Officer Bourland's testimony, of Exhibit 36, the ATF firearms trace summary of the .22 caliber handgun, for which the exact same foundational testimony was provided by Officer Bourland. Tr. Vol. III at 60-62.

evidence has been admitted without objection or contradiction."
*McCovens v. State*, 539 N.E.2d 26, 30 (Ind. 1989).

*Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

[22]    Here, the same evidence that was contained in Exhibit 37 was admitted elsewhere at the trial without objection. Officer Bourland testified, without objection, that the Smith and Wesson handgun with the same serial number as the Smith and Wesson handgun found where Freeman was apprehended by police was purchased by Kenneth McElwee two months before the robbery occurred. Tr. Vol. III at 60. And Borders testified, without objection, that Kenneth McElwee was his guardian and had bought the Smith and Wesson handgun for him. *Id*. at 114, 129. Because the relevant evidence from Exhibit 37 was admitted without objection elsewhere, there was no prejudice to Freeman from the admission of the exhibit.

[23]    Moreover, there was substantial evidence, apart from the ATF firearms trace summary in State's Exhibit 37, that Freeman committed armed robbery by stealing Borders' Smith and Wesson handgun. In addition to both Borders' and Officer Bourland's identification of the Smith and Wesson handgun, Borders also testified that he witnessed Freeman draw a gun on him and then steal Borders' gun from him on the evening of January 8, 2016 by the liquor store on Fulton Avenue. Carnes and Terrell also testified that they saw Freeman get into Borders' vehicle at the liquor store on Fulton Avenue at that date and time and then get back into Carnes' vehicle. EPD officers testified that they stopped Carnes' vehicle in which Freeman was a passenger and observed Freeman then

run away from them. Officer Bourland testified that he found a .22 caliber handgun under the passenger seat in front of where Freeman had been sitting in Carnes' vehicle. Officer Bourland also testified that he found the magazine that fit Borders' gun on the ground right outside of Carnes' vehicle, by the door from which Freeman had exited. And Officer Bourland testified that he found Borders' gun at the location where Freeman was ultimately apprehended by police. Thus, Freeman's conviction of armed robbery was supported by substantial evidence of his guilt independently of Exhibit 37, making any error in the admission of that exhibit harmless. *Hoglund*, 962 N.E.2d at 1238.

## Double Jeopardy under the Indiana Constitution

[24] Freeman was convicted of two counts of resisting law enforcement, one for fleeing from EPD officers after being ordered to stop, and another for fleeing from Officer Elfreich after being ordered to stop and while inflicting bodily injury upon him. Freeman maintains that both of these convictions cannot stand in light of the prohibition against double jeopardy under Article 1, Section 14, of the Indiana Constitution.[11] Whether convictions violate double jeopardy is a question of law which we review de novo. *E.g.*, *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

---

[11] Freeman does not challenge his convictions under the Fifth Amendment to the United States Constitution.

Prohibitions against double jeopardy protect a defendant against, among other things, multiple punishments for the same offense in a single trial. *Richardson v. State*, 717 N.E.2d 32, 37 n.3 (Ind. 1999). "[T]wo or more offenses are the 'same offense' in violation of Article 1, Section 14, of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id*. at 49-50 (emphases and footnote omitted).

> In order to find a double jeopardy violation under the actual evidence test, a reviewing court must conclude there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish *all* the essential elements of a second challenged offense. *Garrett v. State*, 992 N.E.2d 710, 722-23 (Ind. 2013) (quoting *Richardson*, 717 N.E.2d at 53); *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey*[*v. State*], 761 N.E.2d [831,] 833 [(Ind. 2002)]). "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective....'" *Lee*, 892 N.E.2d at 1234 (quoting *Spivey*, 761 N.E.2d at 832). In determining the facts used by the fact-finder, "it is appropriate to consider the charging information, jury instructions, [ ] arguments of counsel" and other factors that may have guided the jury's determination. *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832 and *Richardson*, 717 N.E.2d at 54 n.48).

*Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015) (emphasis added). Thus, under the actual evidence test, "it is not sufficient merely to show that the same

evidence may have been used to prove a single element of two criminal offenses." *Henderson v. State*, 769 N.E.2d 172, 177 (Ind. 2002) (quotations and citation omitted). Rather, "in order for there to be a double jeopardy violation under the actual-evidence test the evidentiary footprint for all the elements required to prove one offense must be the same evidentiary footprint as that required to prove all the elements of another offense."[12] *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015).

[26] Within the context of multiple resisting law enforcement convictions, we have held that "[a] defendant may be convicted of multiple counts of resisting law enforcement when he has committed more than one of the acts enumerated under [I.C. § 35-44.1-3-1]." *Williams v. State*, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001). Thus, we have upheld two convictions for resisting law enforcement when one involved the defendant's act of fleeing from officers under Indiana Code Section 35-44.1-3-1(a), and the other involved the defendant's infliction of bodily injury upon an officer while resisting under Indiana Code Section 35-44.1-3-1(b)(1)(B). *Id.*; *see also*, *Arthur v. State*, 824 N.E.2d 383, 386 (Ind. Ct. App. 2005) (recognizing that "resisting law

---

[12] Thus, Freeman is incorrect when he contends, citing *Alexander v. State*, 768 N.E.2d 971 (Ind. Ct. App. 2002), *trans. denied*, that "a double jeopardy violation occurs if the evidence underlying *all* of the elements of one offense is the same evidence underlying only *one* element of the second offense." Appellant's Br. at 21 (emphasis original). As we noted in *Ellis v. State*, *Alexander* is inconsistent with Supreme Court precedent on this point. 29 N.E.3d 792, 798 n.2 (Ind. Ct. App. 2015) (citing *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013)), *trans. denied*.

enforcement by fleeing is a different 'species' from resisting law enforcement by force"), *trans. denied*.

[27] Here, the charging information for misdemeanor resisting states that Freeman "did knowingly flee from Evansville Police Department Officers, after said officers identified themselves by visible or audible means and visibly or audibly ordered Donald Charles Freeman Jr. to stop." Appellant's Conf. App. at 18. The charging information for felony resisting states that Freeman "did knowingly flee from Officer Z. Elfreich, a law enforcement officer, after said officer identified himself by visible or audible means and visibly or audibly ordered said defendant to stop and in committing said act the defendant inflicted bodily injury on Z. Elfreich, to wit: pain." *Id*. at 17-18. Thus, the misdemeanor conviction is based on Freeman's flight from EPD officers and the felony conviction is based on Freeman's injury of Officer Elfreich while fleeing from him. Because these two convictions involve different elements and were proven by different evidence, they are not barred by the prohibition against double jeopardy. *Williams*, 755 N.E.2d at 1186.

## Clarification of Sentencing Order

[28] Finally, Freeman contends that the written sentencing order in this cause is confusing and should be remanded to the trial court for clarification. We agree. At Freeman's sentencing, the trial court clearly stated that "[a]ll the counts are to run concurrently." Tr. Vol. II at 11. The court further stated that the sentence in this case "is to run consecutive to the sentence in" another criminal

case, i.e., cause number 82C01-1301-FB-34. *Id.* Yet, for each count in this cause, the written sentencing order places an "X" in both the boxes entitled "concurrent" *and* the boxes entitled "consecutive."[13] Appellant's App. Vol. II at 118. And the abstract of judgment does not provide clarification; for each count in this cause, it states as follows: "Consecutive: 82C01-1301-FB-34[;] Concurrent: Counts." *Id.* at 120.

[29] "Where we find an irregularity in the trial court's sentencing decision, we may remand to the trial court for a clarification or new sentencing determination." *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016). We remand with instructions for the trial court to clarify in its sentencing order that all of the counts in this cause are to run *concurrently to each other* and consecutively to the sentence in cause number 82C01-1301-FB-34. We also advise the trial court to correct the statutory citation for count III.

# Conclusion

[30] Freeman waived his foundation objection to Exhibit 37 by failing to raise it in the trial court. Waiver notwithstanding, any error in the admission of Exhibit 37 was harmless. And Freeman's two resisting law enforcement convictions do not violate the Indiana Constitution's prohibition against double jeopardy. We

---

[13] We also note that the sentencing order cites the wrong statutory subsection for count III; it cites I.C. § 35-44.1-3-1(a)(3) for the felony resisting law enforcement conviction, but the correct citation for that crime is I.C. § 35-44.1-3-1(b)(1)(B).

affirm Freeman's convictions and remand for clarification that his sentence for the counts in this cause are to run concurrently to each other and consecutively to the sentence in cause number 82C01-1301-FB-34.

[31] Affirmed and remanded with instructions.

Riley, J., and May, J., concur.