## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 30 2019, 8:37 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dashon Allen Martin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 30, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2114<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1607-F2-28142 |

**Pyle, Judge.**

# Statement of the Case

Dashon Martin ("Martin") appeals his convictions following a bench trial for Level 2 felony dealing in cocaine;[1] Level 6 felony possession of a narcotic drug;[2] Level 6 felony escape;[3] and Class A misdemeanor possession of marijuana.[4] He also appeals his adjudication as an habitual offender.[5] Martin argues that: (1) the trial court abused its discretion in admitting evidence; and (2) fundamental error occurred during the habitual offender phase of Martin's trial. Concluding that any error in the admission of evidence was harmless and that no fundamental error occurred, we affirm Martin's convictions.

# Issues

1. Whether any error in the admission of evidence was harmless.
2. Whether fundamental error occurred during the habitual offender phase of trial.

# Facts

In July 2016, the State charged Martin with dealing in cocaine, possession of cocaine, possession of a narcotic drug, escape, and possession of marijuana and alleged that he was an habitual offender. Testimony at trial revealed that, at the

---

[1] IND. CODE § 35-48-4-1.

[2] I.C. § 35-48-4-6.

[3] I.C. § 35-44.1-3-4.

[4] I.C. § 35-48-4-11

[5] I.C. § 35-50-2-8.

time of his arrest, Martin was "on home detention [at his mother's home] for dealing . . . cocaine." (Tr. Vol. 2 at 43). After receiving a tip that Martin was engaging in narcotics activity, Community Corrections Coordinator Jill Jones ("Jones") conducted a home visit at Martin's mother's apartment. Jones was accompanied to Martin's mother's apartment by IMPD Officer John Wallace ("Officer Wallace") and when she entered the apartment, she immediately smelled the odor of marijuana.

[3] A search of the apartment revealed 43.47 grams of cocaine in baggies hidden under couch cushions and in a bag of Martin's clothes, 4.71 grams of marijuana, and .99 grams of heroin. In addition, the search also uncovered digital scales with residue, plastic baggies with torn off corners on the kitchen table, $2200 in a safe, $800 in Martin's possession, and $120 on a television stand. When asked what the torn corners of baggies indicated to him, Officer Wallace responded without objection that he had often "seen that baggie corners are very frequently used to package narcotics for smaller quantities, breaking up into smaller quantities." (Supp. Tr. Vol. 2 at 52).

[4] IMPD Detective Ryan Vanoeveren ("Detective Vanoeveren"), who has been involved in narcotics investigations for fourteen years, testified that he is familiar with both cocaine users and dealers. According to the detective, cocaine users typically use plastic straws or a glass or metal pipes to ingest cocaine and do not have large amounts of cash on their person because they spend their money as fast as they get it. Detective Vanoeveren also testified that the most common items to repackage cocaine are plastic baggies. Specifically,

he explained that four to five ounces "is going to fit pretty good" in a baggy. (Tr. Supp. Vol. 2 at 149). However, he further explained that for "smaller amounts, then you may take a plastic baggy and put a[n] eight ball or quarter ounce in a bag and tie it off in a knot and cut it off and resell it." (Tr. Supp. Vol. 2 at 149). Detective Vanoeveren testified, based on his training and experience and over Martin's objection, that "no user paraphernalia, baggies with corners missing, a large amount of cash, scales, and about an ounce-and-a-half of cocaine" is consistent with dealing. (Tr. Supp. Vol. 2 at 150). The trial court found Martin guilty as charged on all five counts.

[5] During the habitual offender phase of trial, the State introduced Exhibit 32, which included documents from a prior Level 3 felony dealing in cocaine conviction in *State v. Dashon Martin*. The State also introduced Exhibit 34, which included documents from a prior Court 14 Class D felony possession of cocaine conviction in *State v. Dartanyon Martin*. The documents in Exhibit 34 included a copy of an order granting the State's motion to amend the information by substituting the name Dashon Martin for the name Dartanyon Martin. The State's motion to amend had explained to the trial court that Dashon Martin had falsely used the name Dartanyon Martin when he had been booked but had later admitted that he, Dashon Martin, was the defendant in the felony possession of cocaine cause. Martin did not object to either exhibit, and the trial court admitted them both into evidence.

[6] After admitting the documents into evidence, the trial court continued to look them over and pointed out that the original charging information in Exhibit 34

and the amended information that corrected Martin's name had the two counts "flipflopped and incorrect." (Tr. Supp. Vol. 2 at 63). Specifically, the trial court pointed out that the original information charging Dartanyon Martin listed Count 1 as Class D felony possession of cocaine pursuant to INDIANA CODE § 35-48-4-6 and Count 2 as Class A misdemeanor possession of marijuana pursuant to INDIANA CODE § 38-48-4-11. The accompanying plea agreement provided that Martin would plead guilty to Count 1, possession of cocaine, and the State would dismiss Count 2. The abstract of judgment showed a conviction and sentence for Count 1, possession of cocaine. However, the amended information listed Count 1 as Class A misdemeanor possession of hash oil pursuant to INDIANA CODE § 38-48-4-11 and Count 2 as Class D felony possession of a narcotic drug pursuant to INDIANA CODE § 35-48-4-6. Despite the flipflopping of charges in the amended information, the parties agreed that Exhibit 34 showed that Martin had an unrelated felony conviction for the purposes of an habitual offender adjudication. In fact, Martin stipulated to the unrelated felony conviction and acknowledged that "[i]t does have the substance." (Tr. Vol. 2 at 64). When the trial court remained bothered by the flipflopped charges, the State offered to follow up with Court 14 and request an amended abstract of judgment. The trial court responded that such a follow-up would be appropriate. The trial court stated that Martin had a prior conviction pursuant to Exhibit 32 but that it would withhold judgment on the habitual offender finding until the parties returned for sentencing.

[7]  At Martin's sentencing hearing the following month, the State advised the trial court that it had filed the motion to amend the abstract of judgment in Court 14 and had been notified that the motion had been granted; however, the State had not seen the amended abstract and did not have a copy of it to show the trial court. The State offered to call IDENT "to say that those fingerprints are indeed Dashon Martin's, and match up those priors with the arrested person." (Tr. Vol. 2 at 74). The State also suggested that since Martin's counsel had represented Martin on both of the prior convictions, the State could "end up subpoenaing [Martin's counsel] to say in fact it is Mr. Martin who I represented and pled guilty to these convictions."[6] (Tr. Vol. 2 at 74). The trial court determined that a fingerprint identification was "the cleaner way to do it." (Tr. Vol. 2 at 75). As it looked through Exhibit 34, the trial court pointed out that even without an amended abstract of judgment, "given the record that was filed there, and the motion to amend the charging information, and that reflection

---

[6] Martin's counsel properly responded that the State could not "call [her] because [she had] an attorney/client privilege." (Tr. Vol. 2 at 74). The United States Supreme Court has explained the attorney-client privilege as follows in *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)(quotations and citations omitted):

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

The Indiana Supreme Court has further noted that the "policy justifying the privilege is to encourage full and open disclosure of even very dangerous information." *Glover v. State*, 836 N.E.2d 414, 420 (Ind. 2005). In addition, Indiana has codified the privilege providing that, except as otherwise provided by statute, attorneys shall not be required to testify regarding "confidential communications made to them during the course of their professional business." IND. CODE § 34-46-3-1. Although the Indiana Rules of Professional Conduct provide exceptions to the attorney-client privilege, none of them apply to an attorney testifying about his client's prior convictions to support an habitual offender adjudication. *See* Ind. Professional Conduct Rule 1.6(b).

that Mr. Martin testified that he and Dartanyon Martin are the same, in that court hearing, I think the Court could have easily accepted it, found him guilty of habitual and we could have been done a month ago." (Tr. Vol. 2 at 75, 77). The trial court further explained that it "felt it would just be cleaner, from a procedural sense to have it amended." (Tr. Vol. 2 at 77).

[8] Thereafter, Matthew Weisjahn from the IMPD identification and records unit, testified that he had just taken Martin's fingerprint and that that fingerprint matched the fingerprint admitted as part of Exhibit 34. The trial court found Martin to be an habitual offender, vacated the possession of cocaine conviction, and sentenced Martin to twenty-eight (28) years for dealing cocaine, one (1) year for possession of a narcotic drug, one (1) year for escape, and one-hundred and eighty (180) days for possession of marijuana. The trial court ordered the sentences to run concurrently and enhanced the twenty-eight (28) year sentence by eight (8) years for the habitual offender adjudication.

[9] Martin now appeals.

# Decision

[10] Martin argues that the trial court abused its discretion in admitting evidence and that fundamental error occurred during the habitual offender phase of trial. We address each of his contentions in turn.

## 1. Admission of Evidence

Martin first contends that the trial court erred in admitting Detective Vanoeveren's testimony that items found in Martin's home were consistent with dealing in cocaine. We review the trial court's decision on the admissibility of evidence for an abuse of discretion. *Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied*. We will reverse a trial court's decision only if it is clearly against the logic and effect of the facts and circumstances of the case. *Id.* However, the erroneous admission of evidence is to be disregarded as harmless if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

Here, there was substantial evidence apart from Detective Vanoeveren's testimony to support Martin's conviction. Specifically, officers found 43.47 grams of cocaine in Martin's mother's apartment. One of the bags of cocaine was found in a bag of Martin's clothes. Officers also found digital scales with residue, plastic baggies with torn off corners on the kitchen table, $2200 in a safe, $800 in Martin's possession, and $120 on a television stand. No paraphernalia to use the cocaine, such as a plastic straw or a glass or metal pipe, was found in the apartment. In addition, when asked what the torn corners of baggies indicated to him, Officer Wallace responded that he had often "seen that baggie corners are very frequently used to package narcotics for smaller quantities, breaking up into smaller quantities." (Supp. Tr. Vol. 2 at 52).

This overwhelming evidence, all of which was admitted without objection, leads us to conclude that there is no substantial likelihood that the challenged evidence contributed to Martin's conviction. Any error in the admission of Detective Vanoeveren's testimony that this evidence was consistent with cocaine dealing was therefore harmless.

**2.     Habitual Offender Phase**

Martin also argues that fundamental error occurred during the habitual offender phase of trial. Specifically, Martin contends that the trial "court should have decided if Martin was a[n] habitual offender, based solely on the evidence that the State presented" during the habitual offender phase of trial. (Martin's Br. at 17). According to Martin, the trial court "judge stepped outside of her proper role, as a neutral and passive arbiter, when she pointed out the deficiencies in Exhibit 34, and adjourned the proceedings so that the State could correct those deficiencies." (Martin's Br. at 17).

Martin, however, acknowledges that he failed to object at the habitual offender phase of trial when the trial court adjourned the proceedings. In order to preserve an issue for appeal, a contemporaneous objection must be made when the evidence is introduced at trial. *Palilonis v. State*, 970 N.E.2d 713, 730 (Ind. Ct. App. 2012), *trans. denied*. If no such objection is made, the issue is waived for appellate review. *Id.* Nevertheless, Martin claims the adjournment amounted to fundamental error.

[16] The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Id.* In order to be fundamental, the error must represent a "blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Hoglund*, 962 N.E.2d at 1239. "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Id.* Further, this exception is available only in egregious circumstances. *Palilonis*, 970 N.E.2d at 730.

[17] Here, Martin has failed to allege or show how the adjournment of the habitual offender proceedings to allow the State to clean up the record made a fair trial impossible or why the circumstances in this case were egregious. Rather, our review of the evidence reveals that the trial court simply wanted to obtain a clean record because Exhibit 34, which included information regarding one of Martin's prior convictions, contained clerical errors unrelated to the underlying conviction. In fact, Martin stipulated to having the unrelated conviction set forth in Exhibit 34. The trial court could have adjudicated Martin to be an habitual offender based on this evidence but instead chose to adjourn the proceedings so that the State could seek an amendment to the abstract of judgment in Exhibit 34. According to the trial court, it felt the amendment to the abstract of judgment "would be cleaner." (Tr. Vol. 2 at 77). We agree with the State that the additional proceedings conducted at the trial court's request

did not alter the result of habitual offender adjudication. We find no error, fundamental or otherwise.

[18]    Affirmed.

[19]    Najam, J., and Altice, J., concur.